IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JRS PARTNERS, GP, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 3:19-cv-00469 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| LEECH TISHMAN FUSCALDO & | ) | |
| LAMPL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court are a Fed. R. Civ. P. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 10), filed by Defendant Mankey ("Mankey's Motion") and a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Doc. No. 15), filed by Defendant Leech Tishman Fuscaldo & Lampl, LLC ("Leech Tishman's Motion"). The parties respectively have filed responses and replies. (Doc. Nos. 22-25).

## BACKGROUND

This case is one of several lawsuits arising from a complicated Ponzi scheme through which Chris Warren and others perpetrated securities fraud via their promotion and sales of (purported) securities in two purported investment funds run by Warren and a company called Clean Energy Advisors ("CEA")—investment funds that were entirely fictitious. In this action, Plaintiffs have sued Brett Mankey, an attorney who was formerly a partner with the law firm of Leech Tishman Fuscaldo & Lampl ("Leech Tishman") in Philadelphia, and Leech Tishman for negligent and fraudulent misrepresentations, civil conspiracy, legal malpractice, and (against Leech Tishman only) negligent retention and supervision. The case was filed in this Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). (Doc. No. 1 at 5).

Plaintiffs allege that Defendants made certain misrepresentations to Plaintiffs in connection with Plaintiffs' investments in two of the fictitious investment funds, specifically the Utility Solar Fund IV ("Solar IV") and the CEA Utility Income Fund ("UIF") (together, "the Funds"). Plaintiffs contend that, prior to making their investments in the Funds, they spoke with Mankey, who represented CEA and the Funds, to confirm that the Funds were legitimate and valid investments. Plaintiffs assert that Mankey falsely represented that (1) the Funds were in fact legitimate, (2) the Funds' operations were up and running, (3) the Funds were insured through various insurance policies, and (4) Plaintiffs could recognize certain tax benefits from investments in the Funds. (Doc. No. 1 at 3).

In truth, Plaintiffs allege, Defendants "had no idea if the statements they made to Plaintiffs were accurate and were relying solely on the unchecked representations of the mastermind of the scheme." (Doc. No. at 1). Plaintiffs contend that they relied on Mankey's misrepresentations and, had Defendants "told Plaintiffs the truth," Plaintiffs never would have invested in the Funds. (*Id*.).

## MANKEY'S MOTION

A. Standard of Review: Personal Jurisdiction

Mankey filed his motion pursuant to Fed. R. Civ. P. 12(b)(2), which provides for dismissal of a claim for "lack of personal jurisdiction." A plaintiff bears the burden of establishing personal jurisdiction. *Elcan v. FP Assocs. LTD,* Case No. 3:19-cv-01146, 2020 WL 2769993, at *3 (M.D. Tenn. May 28, 2020). On a personal-jurisdiction motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue,[1] or conduct an

---

[1] Plaintiffs mention that Mankey's Affidavit makes "limited jurisdictional discovery appropriate" (Doc. No. 23 at 4) and that "limited, expedited jurisdictional discovery [is] wholly appropriate if this Court should question whether Mankey is subject to its jurisdiction." (*Id.* at 5). But it is Plaintiffs', not the Court's, burden to establish that the exercise of personal jurisdiction is appropriate; this means, among other things, that the Court should not first decide whether

evidentiary hearing. *Id.* (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)). Where, as here, the court rules without conducting an evidentiary hearing, the plaintiff's burden of proof is "relatively slight." *Id.* (citing *MAG IAS Holdings, Inc. v. Schmöckle,* 854 F.3d 894, 899 (6th Cir. 2017)).

When a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Elcan,* 2020 WL 2769993, at *3. The Sixth Circuit has held that a court disposing of a Rule 12(b)(2) motion without an evidentiary hearing should not weigh the controverting assertions of the party seeking dismissal, because "we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996), *cited in Elcan,* 2020 WL 2769993, at *3. "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.* "In this procedural posture [without an evidentiary hearing], the court does not weigh the facts disputed by the parties but may consider the defendant's undisputed factual assertions." *Camps v. Gore Capital, LLC,* No. 3:17-cv-1039, 2019 WL 2763902, at *4 (M.D. Tenn. July 2, 2019). Because there has been no evidentiary hearing with regard to Mankey's Motion, the Court will determine whether Plaintiff has demonstrated personal jurisdiction over Mankey under a *prima facie* standard, rather than the heavier preponderance of the evidence standard. *Camps,*

---

Plaintiffs have failed to meet that burden and, if so, *sua sponte* order jurisdictional discovery to see whether Plaintiffs—aided by such discovery—can meet their burden on a do-over . Plaintiffs have not filed a motion for such limited jurisdictional discovery or for an evidentiary hearing, and the Court will decide Mankey's Motion on the affidavits and pleadings alone, without regard to the suggested backup plan of re-deciding the issue later if it first finds that Plaintiffs have not met their burden to show personal jurisdiction.

2019 WL 2763902, at **4-5. "'A prima facie showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction.'" *Reyes v. Freedom Smokes, Inc*., No. 5:19-CV-2695, 2020 WL 1677480, at *2 (N.D. Ohio Apr. 6, 2020) (quoting *Death v. Mabry*, No. C18-5444 RBL, 2018 WL 6571148, at *2 (W.D. Wash. Dec. 13, 2018)).

In a diversity case such as this one, a plaintiff must satisfy the state-law requirements for personal jurisdiction. *Camps,* 2019 WL 2763902, at *5; *Bulso v. O'Shea*, No. 3-16-0040, 2017 WL 563940, at *1 (M.D. Tenn. Feb. 13, 2017) ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). Tennessee law authorizes its courts to exercise jurisdiction over persons on "any basis not inconsistent with the constitution of this state or of the United States." *Id*. (citing Tenn. Code Ann. § 20-2-214(a)(6)). Therefore, the Court must decide whether the exercise of jurisdiction comports with the limits imposed by federal due process. *Id*.; *see also Camps*, 2019 WL 2763902, at *5 ("In other words, the jurisdictional limits of Tennessee law and federal constitutional due process are identical, and the two inquiries are merged.").

B. Standard of Review: Specific Jurisdiction

Personal jurisdiction comes in two forms: general and specific. *Tailgate Beer, LLC v. Boulevard Brewing Co.,* No. 3:18-cv-00563, 2019 WL 2366948, at *2 (M.D. Tenn. June 5, 2019). Plaintiffs do not assert that the Court has general jurisdiction[2] over Mankey. (Doc. No. 23 at 4). Rather, Plaintiffs allege that the Court has specific jurisdiction and "conspiracy jurisdiction" over Mankey.

---

[2] "General jurisdiction" requires that a plaintiff have continuous and systematic contacts with the state. *Tailgate Beer*, 2019 WL 2366948, at *2.

Specific jurisdiction must arise out of or relate to the defendant's contacts with the forum—principally an activity or occurrence that takes place in the forum state. *Tailgate Beer,* 2019 WL 2366948, at *2. For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum. *EnhanceWorks, Inc. v. Dropbox, Inc.*, No. M2018-01227-COA-R3-CV, 2019 WL 1220903, at *6 (Tenn. Ct. App. Mar. 14, 2019) (citing *Walden v. Fiore*, 571 U.S. 277, 294 (2014)). "Specific jurisdiction requires us to focus on the 'affiliation between the forum and the underlying controversy.'" *Power Invs., LLC v. SL EC, LLC,* 927 F.3d 914, 917 (6th Cir. 2019) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)). The question is whether "the *defendant's* actions connect him to the *forum,"* and thus the analytical focus should not be on the plaintiff's contacts with the defendant and forum. *Walden*, 571 U.S. at 289.

The Court has specific jurisdiction over Defendant Mankey if Plaintiffs show that: (1) Mankey purposefully availed himself of the privilege of acting in Tennessee or causing a consequence in Tennessee; (2) the causes of action herein arose from Mankey's activities in Tennessee; (3) Mankey's action in Tennessee or the consequences caused by his actions directed towards Tennessee are substantial enough to make the exercise of personal jurisdiction over him reasonable. *Tailgate Beer,* 2019 WL 2366948, at *2; *Winston v. Zaehringer,* No. 1:19-CV-216, 2020 WL 3259531, at *6 (E.D. Tenn. June 16, 2020).

### 1. *Purposeful Availment*

The purposeful availment requirement is considered the most important. *Camps*, 2019 WL 2763902, at *5. Purposeful availment is the "constitutional touchstone"[3] of personal jurisdiction.

---

[3] The Court realizes that this metaphor is too vague to be very instructive; all the Court really can derive from it is that it means that "purposeful availment" is very important to personal

*Winston*, 2020 WL 3259531, at *6 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Purposeful availment is present where the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum. *Tailgate Beer,* 2019 WL 2366948, at *4. The purposeful availment prong of the test asks whether the defendant acted or caused a consequence in Tennessee such that it "invoked the benefits and protections" of Tennessee law and, thus, could have reasonably anticipated being brought into court there. *Elcan*, 2020 WL 2769993, at *4. A defendant should not be brought to court in a particular forum solely as a result of random, fortuitous, or attenuated contacts with that forum. *Id.*

A court can have jurisdiction over a defendant even if the defendant has few contacts with the forum, but the defendant must have done something to create a contact with the forum. *Winston,* 2020 WL 3259531, at *7. A plaintiff cannot rely on his or her own contacts with the forum to justify jurisdiction over the defendant. *Id*. Thus, the defendant's relationship with the forum state must arise out of contacts that the defendant himself created; the unilateral activity of the plaintiff or a third-party cannot be the basis of exercising personal jurisdiction over a defendant. *Camps*, 2019 WL 2763902, at *6.

### 2. *Arising From*

"If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Tailgate Beer,* 2019 WL 2366948, at *5. This factor does not require that the cause of action formally arise from

---

jurisdiction—a truism already apparent from the above-stated fact that a defendant's "purposeful availment" is required for that defendant to be subject to personal jurisdiction.

the defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities. *Id.*

### 3. *Reasonableness*

If a court finds that the plaintiff has established the first two prongs of the specific-jurisdiction inquiry, the burden shifts to the defendant to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Tailgate Beer,* 2019 WL 2366948, at *6. The burden on the defendant to meet this prong is high. *Id.* The Sixth Circuit has stated that "[i]n determining reasonableness, we examine three factors: (1) the burden on the defendant; (2) the forum state's interest; and (3) the plaintiff's interest in obtaining relief." *Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018).[4]

---

[4] Other courts have found five factors to be relevant in determining the reasonableness of exercising personal jurisdiction: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Tailgate Beer,* 2019 WL 2366948, at *6 (citing *Susan McKnight, Inc. v. United Indus. Corp.,* 273 F. Supp. 3d 874, 888 (W.D. Tenn. 2017)). The Court questions why a question of personal jurisdiction—one that is at bottom about *due process for defendants*—should turn at all upon the last two concerns, which actually have nothing whatsoever to do with due process to defendants. In any event, following the Sixth Circuit's lead as noted above, the Court will not apply those two factors.

C. <u>Analysis: Specific Jurisdiction</u>[5]

Mankey argues that Plaintiffs' claims against him are based solely upon two phone calls and some email exchanges in August and September of 2015. (Doc. No. 11 at 3). Noting correctly that personal jurisdiction cannot arise from the unilateral activities of a plaintiff, he contends that personal jurisdiction cannot arise from these phone calls and emails, because they were initiated by Plaintiffs.

In response to Mankey's Motion, Plaintiffs assert that there is no dispute that Mankey provided legal representation for CEA, a company with its principal place of business in Tennessee, and had regular contact with Warren, a Tennessee resident, who was CEA's Chief Executive Officer ("CEO"). The Complaint alleges that Mankey confirmed that he also represented both Solar IV and UIF. (Doc. No. 1 at ¶ 75). Moreover, the Complaint alleges that Warren relied on Mankey to speak with prospective investors, like Plaintiffs, in order to induce them to invest in the Funds and that "Defendants agreed to assist Mr. Warren by providing assurances and advice to potential investors and existing investors considering additional investments." (Doc. No. 1 at ¶¶ 23 and 107). It was this type of "assistance" that Mankey was providing at the time he spoke with Plaintiffs. Plaintiffs argue that it is also undisputed that the misrepresentations Mankey made to Plaintiffs arose directly from Mankey's legal representation

---

[5] The Complaint alleges that this Court has jurisdiction over each of the Defendants and the claims asserted "pursuant to Defendants' continuous and systematic contacts with the State of Tennessee, which claims arise out of and relate to such contacts." (Doc. No. 1 at ¶ 14). "Continuous and systematic contacts" are relevant to the test for general jurisdiction rather than specific jurisdiction, and Plaintiffs have stated that they do not assert that the Court has general jurisdiction over Mankey. It is only the latter part of that sentence that reflects the theory upon which Plaintiffs rely, specific jurisdiction.

of CEA and his contacts with Warren. Thus, Plaintiff contends, Mankey "subjected himself to the jurisdiction of this state." (Doc. No. 23 at 5).[6]

In support of his Motion, Mankey has filed an Affidavit in which he states, among other things, that (1) he does not live in Tennessee, is not licensed to practice law in Tennessee, and does not regularly conduct business in Tennessee; (2) he has visited Tennessee only one time for business and twice for social reasons; (3) he did not communicate with any of the Plaintiffs in the course of his business visit to Tennessee; and (4) Plaintiffs initiated telephone calls and emails with him while he was in his Pennsylvania law office. (Doc. No. 12). Mankey also states that (1) he and his law firm (Leech Tishman) were retained by CEA in 2014 with regard to the UIF Fund; (2) neither he nor Leech Tishman was retained by CEA with regard to the Solar IV Fund; (3) he and other lawyers at Leech Tishman drafted the operating agreement for the UIF Fund and made comments with regard to a draft operating memorandum provided to him by Chris Warren, the CEO of CEA; and (4) he served as Leech Tishman's primary contact with CEA. (*Id.*)

The Engagement Letter attached to Mankey's Affidavit (Doc. No. 12-1) is addressed to Chris Warren as CEO of CEA, 810 Dominican Drive, Nashville, Tennessee. It indicates that Mankey and Leech Tishman agreed to provide general legal counsel to Warren and CEA "relating

---

[6] Plaintiffs also claim that this Court has jurisdiction over Mankey because he caused an injury within this State. Mere injury to a forum resident, however, is not a sufficient connection to the forum. *Bulso,* 2017 WL 563940, at *2. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* (citing *Walden,* 134 S. Ct. at 1125). "The argument that specific jurisdiction exists over a defendant solely because the effects of his intentional act are felt there cannot be reconciled with the Supreme Court's decision in *Walden.*" *Id.* As *Walden* put it, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." 571 U.S. at 290.

to the growth of [their] renewable energy investing and development business." (*Id.* at 1). The Engagement Letter proposes a "general counsel program" by which Warren and CEA could select to purchase a "tier" of legal services for a three-month period at established monthly rates. Prior to the selection of any tier in the "general counsel program," Warren and CEA "will be billed at our full standard rates." (*Id.* at 2). There is no indication on the Engagement Letter which, if any, tier of legal services Warren and CEA selected.

Plaintiffs have filed two exhibits related to Mankey's representation of CEA—an invoice dated July 15, 2014 from Leech Tishman to Chris Warren, Clean Energy Advisors, LLC, 810 Dominican Drive, Nashville, Tennessee (Doc. No. 23-1) and a document on what seems to be CEA letterhead, entitled "External General Counsel" (Doc. No. 23-2). The invoice reflects billing to CEA for professional services from Leech Tishman totaling $16,605.82 for services over the time period June 1, 2015, through June 15, 2015. (Doc. No. 23-1). The second document announces that CEA has retained Leech Tishman as its General Counsel and includes a description of the law firm and a statement that "Brett Mankey in the Pittsburgh office serves as our primary contact and General Counsel." (Doc. No. 23-2). That document also includes a 27-page document entitled "Leech Tishman Energy Practice Overview" prepared for Clean Energy Advisors. (*Id.*). Mankey has not disputed the authenticity or admissibility (at least for instant purposes) of these exhibits.

Thus, it appears that Mankey's relevant connections with the Volunteer State are not limited to two phone calls and some emails with Plaintiffs. Mankey has not disputed that he and Leech Tishman represented (as General Counsel), and indeed contracted to represent CEA. From that position as General Counsel for CEA, he made the alleged misrepresentations to Plaintiffs, misrepresentations concerning his Tennessee-based client made in the scope of his employment as

General Counsel for that Tennessee-based client Plaintiffs are not the only link between Mankey and the forum state. Moreover, the Court finds that Mankey's contacts with Tennessee proximately resulted from actions of Mankey himself— agreeing to represent CEA as General Counsel, actually working for CEA (as reflected by the above-mentioned invoice), traveling to Tennessee for business as CEA's attorney (even if he did not meet with Plaintiffs on that trip), and in his role as General Counsel, making alleged misrepresentations to Plaintiffs in Tennessee.

Mankey cites *City Capital Markets Corp. v. McCalla Raymer LLC*, No. 2:10-cv-00116, 2011 WL 1259053, at *6 (S.D. W.Va. Mar. 30, 2011) and *Cape v. von Maur*, 932 F. Supp. 124, 125–26 (D. Md. 1996) to argue that "an attorney who represents a client who resides in another state does not thereby subject himself to jurisdiction in that state." (Doc. No. 24 at n.2). Both those cases, however, in addition to being from out of this circuit, are inapposite; each involved attorneys who provided out-of-state legal representation to clients in forums *other than the client's home state* and were then sued by the client *in the client's home state*. That is to say, their representation-related contacts were more attenuated from the forum state than are Mankey's representation-related contacts with Tennessee.

For example, in *City Capital*, the underlying action which the defendants were retained to resolve on behalf of the plaintiff was confined entirely to the state of Georgia, not West Virginia, where the plaintiff lived. The court there stated that "merely providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which the client resides." *City Capital*, 2011 WL 1259053 at *6. In *Cape*, the attorneys were residents of Germany, hired to represent the plaintiff only in Germany. All services rendered by them on behalf of the plaintiff were rendered in Germany. The plaintiff then sued them in his home forum, Maryland. *Cape*, 932 F. Supp. at 125-26. That situation does

not exist here. Mankey was not hired as General Counsel to perform work solely in a state other than Tennessee; rather, his legal representation of CEA revolved around CEA's existence and business (and its CEO, Warren) here in Tennessee, and he purposely directed his activities toward these residents of Tennessee.

Mankey's actions *do* connect him to this state. He cites *Walden* as instructive, but in *Walden,* unlike here, the Court found that the defendant (in contrast to the plaintiff) had formed no jurisdictionally relevant contacts with the forum state. *Walden*, 571 U.S. at 288-89. And here, the alleged causes of action against Mankey in this litigation arose directly from his position as General Counsel, the legal representation that connects him to Tennessee. He was not just General Counsel for CEA in name only; he obviously (and undisputedly) performed work for CEA, for which he invoiced the company. Unlike *Bulso*,[7] which Mankey also cites, CEA did not retain Markey simply to represent it in litigation in states other than the forum state. CEA retained Mankey and Leech Tishman to be General Counsel for the company. As General Counsel to a company based in Nashville, Tennessee, Mankey's contacts connected him to Tennessee in a meaningful way. Unlike the situation in *Rice v. Karsch*,[8] also cited by Mankey, not all of Mankey's communications and contacts with Tennessee were as a result of communications initiated by Plaintiffs. Mankey's connection with Tennessee began with CEA, and his representations to Plaintiffs were made in his capacity as General Counsel for CEA. Indeed, one could argue that Mankey's communications with Plaintiffs in Tennessee were attempts to further his business as General Counsel for CEA.

---

[7] *Bulso,* 2017 WL 563940 (M.D. Tenn. Feb. 13, 2017).

[8] *Rice v. Karsch*, 154 F. App'x 454 (6th Cir. 2005).

For these reasons, the Court finds that Mankey "purposefully availed" himself of the privilege of acting in the forum state, Tennessee.

With regard to the second prong of the specific jurisdiction test, as explained above, an action is deemed to have arisen from a defendant's contacts with the forum state if those contacts "are related to the operative facts of the controversy." *Tailgate Beer,* 2019 WL 2366948, at *5. This criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities. *Id.* Here, the cause of action arose directly from Mankey's connection with Tennessee in his role as General Counsel for CEA. The operative facts of the controversy in this case revolve around the complicated Ponzi scheme of Chris Warren and others, including CEA, and the promotion and sales of purported securities in Solar IV and UIF. Those facts arose in Tennessee and have been litigated in other cases in Tennessee. Mankey's contacts with Tennessee are clearly related to the operative facts of this controversy.

Finally, the Court finds that it is reasonable to exercise personal jurisdiction over Mankey in this case. Mankey has not met the high burden of "presenting a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Tailgate Beer,* 2019 WL 2366948, at *6. Mankey's arguments focus only on the purposeful availment prong of the specific jurisdiction test. He has not discussed the factors considered by courts in making this determination or shown that the burden on him, the forum state's interest, or the plaintiff's interest in obtaining relief weigh in his favor, rather than in Plaintiffs' favor. *See Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018).

D. <u>Conclusion</u>

For these reasons, the Court finds that it may appropriately exercise specific personal jurisdiction over Defendant Mankey in this action. Therefore, it need not and will not address

Plaintiffs' claim of "conspiratorial jurisdiction" over Mankey. Accordingly, Mankey's Motion will be denied.

**LEECH TISHMAN'S MOTION**

Leech Tishman asks the Court to dismiss Plaintiffs' claims against it, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. As noted, the claims asserted against Leech Tishman are negligent and fraudulent misrepresentations, civil conspiracy, legal malpractice, and negligent retention and supervision.[9]

A. Standard of Review: 12(b)(6) Motion to Dismiss

For purposes of a motion to dismiss, the Court must take all the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as

---

[9] Leech Tishman does not specifically request that the claim for negligent retention and supervision be dismissed, let alone support such a request with argument. To the extent it intended to include this claim within the scope of its other arguments, any such motion to dismiss will be denied.

mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.,* 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

Leech Tishman notes that "*Twombly* announced the 'retirement' of the *Conley v. Gibson* standard, which held that 'a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove to set of facts in support of his claim which would entitle him to relief.'" (Doc. No. 16 at 5 n.4 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). This was an important (and entirely warranted) development in the law of Rule 12(b)(6) motions

to dismiss, and the Court as always will eschew the obsolete (and largely nonsensical) *Conley* standard.

B. Civil Conspiracy

Under Tennessee law, civil conspiracy is not itself a cause of action. *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 849 (M.D. Tenn. 2019) (noting that under Tennessee law, there is no such thing as a cause of action for civil conspiracy); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 887 (W.D. Tenn. 1999) ("It is well settled in Tennessee that the tort of civil conspiracy requires underlying wrongful conduct, and that conspiracy, standing alone, is not sufficient to support a cause of action.").

Civil conspiracy is, instead, a means of extending, to a tortfeasor's co-conspirators, liability for the tortfeasor's underlying tort. *See Wachter,* 387 F. Supp. 3d at 849. ("Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme." (quoting *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002))). Consistent with its function, a civil conspiracy "'requires an underlying predicate tort allegedly committed pursuant to the conspiracy.'" *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (quoting *Watson's Carpet & Floor Coverings, Inc. v. McCormick,* 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007)); *see also Wachter,* 387 F. Supp. 3d at 849. "Conspiracy, standing alone, is not actionable where the underlying tort is not actionable." *Id.* And where the complaint alleges no underlying tort, the civil conspiracy claim has not been validly stated and should be dismissed for failure to state a claim. *Law v. Bioheart Inc.*, No. 07-02177, 2007 WL 9706676, at *2 (W.D. Tenn. July 26, 2007).[10]

---

[10] Of course, federal law, and not Tennessee law, governs here as to whether a claim should be dismissed for failure to state a claim, because that is a procedural matter. But the procedural result under Tennessee law applies here as well: under Fed. R. Civ. P. 12(b)(6) as interpreted by *Twombly*

The elements of a civil conspiracy are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury. *B&L Mgmt. Grp., LLC v. Adair*, No. 17-2197, 2019 WL 3459244, at *10 (W.D. Tenn. July 31, 2019) (citing *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). In other words, the elements of a civil conspiracy include common design, concert of action, and an overt act. *Wachter,* 387 F. Supp. 3d at 848. There must be a concerted effort by the defendants to cause harm to the plaintiff, and the plaintiff must, in fact, suffer harm as a result of the defendants' efforts. *Id.*

One will note that in the statement of elements above, the first requirement is specified as a "common design," and not as an "agreement" or "combination." As it happens, Leech Tishman maintains that it really "means agreement," and Plaintiffs maintain (in what they assert to be a vital distinction) that it means "combination." Specifically, Leech Tishman first argues that Plaintiffs have failed to state a sustainable claim for civil conspiracy because they have not alleged an "agreement" between Leech Tishman and Warren [or CEA] to accomplish an unlawful purpose. Plaintiffs contend that Leech Tishman has cited the incorrect standard and that, rather than requiring an *agreement*, the Tennessee Supreme Court defines civil conspiracy as a "*combination* between two or more persons." In light of the complete definitions set forth in the case law and the accompanying explanations of the elements of civil conspiracy, the Court (though never

---

and *Iqbal*, where the requirements of a claim under substantive state law are not adequately alleged (as when, like here, the required underlying tort is not adequately pled), dismissal for failure to state a claim is appropriate.

dismissive of this kind of alleged nuance) finds any distinction between "agreement" and "combination" to be one without a difference.[11]

Tennessee courts have defined a civil conspiracy both ways. In *Vision Real Estate Inv. Corp. v. Metro. Gov't of Nashville & Davidson Cty.*, No. 3:18-cv-00014, 2019 WL 4748386, at *14 (M.D. Tenn. Sept. 30, 2019), this Court stated that a civil conspiracy is defined as "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Id.* (citing *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010)); *see also Wachter, Inc. v. Cabling Innovations, LLC,* 387 F. Supp. 3d 830, 848 (M.D. Tenn. 2019) (same) and *Cross v. Rodgers*, No. 3:16-cv-01128, 2017 WL 3237623, at *5 (M.D. Tenn. July 31, 2017) (conspiracy defined as "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means.").

In *HealthStar, LLC v. Dynamic Vision, Inc.*, No. 3:18-CV-00434, 2019 WL 7176819, at *4 (E.D. Tenn. July 19, 2019), the court held that Tennessee courts define the tort of conspiracy as "an agreement between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Id.* The Tennessee Supreme Court has defined the tort of conspiracy as "an agreement between two or more persons to

---

[11] Thus, Plaintiffs' lengthy contention in footnote 4 of their opposition brief (Doc. No. 22) is an exaggerated and unnecessary diatribe on Leech Tishman's alleged "mistake." To the (limited) extent Plaintiffs' grievance here is related to Leech Tishman attributing a quote to the wrong case, the Court understands Plaintiffs' point but accepts Leech Tishman's explanation (and accompanying apology), (Doc. No. 25 at 1 & n.1), that this was a scrivener's error. But to the extent that Plaintiffs claim that Leech Tishman falsely asserts that civil conspiracy under Tennessee law requires a "formal" agreement, (Doc. No. 22 at 6), the claim is unfounded. Nowhere does Leech Tishman make such a claim; its (correct) point is that an agreement is required, not that a *formal* (as opposed to informal or tacit) agreement is required.

accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 395 (Tenn. 2015). "Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Id.* at 396. So a defendant can be liable for the torts of others on a civil conspiracy theory only if the defendant has such intent. The agreement by conspirators need not be formal, however; the understanding may be a tacit one, and it is not essential that each conspirator have knowledge of the details of the conspiracy. *Id.* Moreover, a conspirator may be found liable if he or she understands the general objectives of the scheme, accepts them, and agrees, either explicitly or implicitly, to do his or her part to further them. *Id.*

As indicated above, Leech Tishman contends that Plaintiffs' allegations fail to assert the required agreement. The Court agrees, albeit for a slightly different reason that that asserted by Leech Tishman, which focuses on Plaintiffs' purported failure to allege an agreement to perpetrate *the illegal Ponzi scheme*. The Court instead focuses on the far more indisputable reality that Plaintiffs have failed to allege an agreement to engage in conduct that in fact amounts specifically to a *tort* (as opposed to wrongful or illegal conduct not meeting all elements of a tort cause of action) under applicable law.

It is clear that, as indicated above, an element of the civil conspiracy theory is an underlying tort. That is, absent a co-conspirator's underlying tort(s) to which liability can attach, a defendant cannot be liable under a civil conspiracy theory; there is nothing for the defendant to be liable for. The case law strongly indicates that civil conspiracy requires proof—and at the pleading stage— allegations of one or more specific torts, and not just wrongful conduct generally described in conclusory fashion as "tortious."

For example, in *Winston v. Zaehringer*, No. 1:19-CV-216, 2020 WL 3259531 (E.D. Tenn. June 16, 2020), the defendant argued that the civil conspiracy claim against him must be dismissed because (according to the defendant) the plaintiffs had not pled an underlying tort. *Id.* at *13. The court disagreed, noting that the plaintiffs had pled two underlying torts, namely, common law fraud and negligent misrepresentation.[12] *See id.* Prior to so noting, however, the court had gone through a detailed analysis of whether the plaintiffs' allegations were sufficient as to each specific element of each of the claims. *Id.* at *11-12. *Winston*, and cases like it, suggest that it is not enough to base a claim of civil conspiracy on underlying conduct that is alleged to be merely wrongful, or tortious in some general sense without reference to specific tort causes of action. Instead, "'[i]f the underlying wrongful conduct is found to be not actionable than the conspiracy claim must also fail.'") *Marshall v. ITT Tech. Inst.*, No. 3:11-CV-552, 2012 WL 1205581, at *4 n.4 (E.D. Tenn. Apr. 11, 2012) (quoting *Greene v. Brown & Williamson Tobacco Corp.,* 72 F. Supp. 2d 882, 887 (W.D. Tenn.1999)).

Requiring in the complaint a specification of the specific underlying tort certainly would serve to further the policies behind notice pleading. As it stands now, Defendants have no notice of the specific underlying torts of CEA and/or Warren supposedly rendering them liable as co-conspirators. They need to know this in order to defend this lawsuit and, under the Federal Rules of Civil Procedure, are entitled to learn this through the complaint rather than by, for example, ferreting it out during discovery. And for its part, the Court wants to know what the underlying tort causes of action are.

---

[12] As an aside, the Court wonders whether, as essentially is required for a valid civil conspiracy under Tennessee law, conspirators can have an agreement to do things with an *intent* to do them *negligently*. But whether a claim for negligent misrepresentation was for this reason insufficient to support liability under a theory a civil conspiracy was not before the court in *Winston*.

Here, Plaintiffs have not specified any underlying torts of CEA and Warren for which Defendants allegedly are liable. The Complaint refers on numerous occasions to CEA and Warren's fraudulent scheme and conduct. And in (only) one place, it refers to their "tortious acts." (Doc. No. 1 at 21). But nowhere is a particular tort—a particular cause of action under Tennessee (or, for that matter, federal) law—specified. This is not a mere technicality; it is a failure to allege something essential for recovering under the civil conspiracy cause of action. And the Court cannot imply a particular cause of action, such as common law fraud under Tennessee law, by rationalizing that this must have been what Plaintiffs were referring to. The Court does not know what underlying tort(s) Plaintiffs had in mind, nor can it assess whether Plaintiffs have adequately alleged such tort(s) given the applicable elements.

Likewise, not knowing what underlying torts are alleged, the Court cannot say that Plaintiffs have adequately alleged that Defendants entered into a conspiracy with CEA or Warren to commit any torts. In fact, the Court concludes that Plaintiffs have not done so, because they have not adequately alleged the torts the alleged conspirators agreed to commit. This brings us back full circle to Leech Tishman's argument: the Court agrees, albeit for a somewhat different particular reason, that Plaintiffs have failed to adequately allege an agreement sufficient to support a theory of civil conspiracy under Tennessee law.

In summary, Count Three, alleging a civil conspiracy theory, will be dismissed due to the failure: (1) to adequately allege (whether expressly or by drawable inference) as required one or more underlying torts; and relatedly, (2) to adequately allege as required an agreement to commit an underlying tort.

C. <u>Allocation of Fault</u>

Leech Tishman argues that Plaintiffs' non-conspiracy claims are barred because 100% of the fault for Plaintiffs' alleged losses has been allocated against Warren, CEA and the Funds in another lawsuit. Specifically, Leech Tishman points to *JRS Partners, et al. v. Chris Warren, et al.*, Case No. 3:17-cv-01258 ("Warren lawsuit"), which remains pending in this Court.[13] Leech Tishman relies on Tenn. Code Ann. § 29-11-107(a), which provides generally that if multiple defendants are found liable in a civil action governed by comparative fault, a defendant shall only be severally liable for the percentage of damages for which fault is attributed to such defendant by the trier of fact, and no defendant shall be held jointly liable for any damages. Leech Tishman argues that the "logical application" of this statute should effectively bar allocation of fault to a defendant where 100% of the fault has previously been allocated to another defendant or defendants. (Doc. No. 16 at 10).

In the Warren lawsuit, the Court entered default judgment against Warren, CEA and the Funds, on behalf of the plaintiffs in that case (all of whom except one are Plaintiffs herein), for millions of dollars. Default judgment was entered because Warren, CEA and the Funds failed to respond to the Complaint, whereafter the Magistrate Judge recommended default judgment against them. Neither the Report and Recommendation of the Magistrate Judge (Warren lawsuit, Doc. No. 60) nor the Order adopting that Report and Recommendation and entering default judgment (*Id.,* Doc. No. 63) made any allocation whatsoever of fault. Warren, CEA and the Funds were held jointly and severally liable, by default, for the amounts awarded each Plaintiff. (*Id.*, Doc. No. 63).

---

[13] There are nine defendants in the Warren case against whom claims are still pending.

Leech Tishman argues that Tennessee law precludes any defendant for being held jointly liable for damages in a civil action governed by comparative fault[14] and, therefore, there can be no allocation of fault to a defendant where 100% of the fault has previously been allocated to another defendant or defendants. There are several problems with this novel argument. First, the Court did *not* allocate fault, 100% or otherwise, in the Warren lawsuit. So this premise of Leech Tishman's argument is false.

Moreover, on the motion for default judgment in the Warren lawsuit, no other defendant or its alleged "fault" was considered. In other words, in granting that motion, the Court did not assess, and could not have assessed, fault against any other entity besides Warren, CEA, and the Funds. *See Medilink Ins. Co., Ltd. v. Comerica Bank*, No. 09-CV-13692, 2010 WL 11492421, at *6 (E.D. Mich. Feb. 17, 2010) ("Because Judge Edmunds could not have allocated fault to another party and because the judgment does not state the percentage of fault that was allocated, the prior judgment does not necessarily mean that Judge Edmunds determined the Bender Defendants to be 100% at fault and Comerica Bank 0% at fault.").

In addition, the claims asserted in the Warren lawsuit are entirely different from the claims —or at least the surviving claims—asserted herein. In the Warren lawsuit, the plaintiffs alleged violations of state and federal securities laws, breach of fiduciary duties, fraud, conversion, and violations of the Tennessee Consumer Protection Act. Leech Tishman has not cited any authority to show that the Court even *could* have allocated fault as to those claims. And, even if the Court

---

[14] Neither side has argued that Plaintiffs' claims herein are *not* governed by comparative fault, nor has Leech Tishman cited any authority to show that claims for negligent and intentional misrepresentation, legal malpractice, negligent retention and supervision, and/or civil conspiracy are governed by comparative fault principles.

*had* allocated fault against Warren, CEA, and the Funds in that lawsuit, which it did not, the fault would have been allocated with regard to *different* claims.

Finally, as Leech Tishman suggests (Doc. No. 16 at 12), any reliance upon Tenn. Code Ann. § 29-11-107(b) is also unavailing. That subsection of the statute provides that the doctrine of joint and several liability remains in effect for civil conspiracy claims: "Notwithstanding subsection (a), the doctrine of joint and several liability remains in effect: (1) To apportion financial responsibility in a civil conspiracy among two (2) or more at-fault defendants who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish by concert a lawful purpose by unlawful means, which results in damage to the plaintiff." Tenn. Code Ann. § 29-11-107(b)(1). But the Court is dismissing Plaintiffs' civil conspiracy claims, so this subsection is not applicable.[15]

For these reasons, dismissal of Plaintiffs' claims based upon a default judgment in a separate lawsuit is not appropriate, and Leech Tishman's motion to dismiss on that basis will be denied.

### D. Legal Malpractice

Plaintiffs allege that through their investments in Solar IV, they became "either general partners or limited partners" in Solar IV. (Doc. No. 1 at ¶ 116). Therefore, they contend, Mankey and Leech Tishman, as legal counsel to Solar IV, were also legal counsel for Plaintiffs. (*Id.* at

---

[15] In any event, Leech Tishman has cited no authority—and concedes it has found none—for its assertion that the logical application of this statute "should effectively bar allocation of fault to a defendant where 100% of the fault has previously been allocated to another defendant or defendants." (Doc. No. 16 at 10). Leech Tishman's reliance upon what the court did *not* say in *In re Estate of Link*, No. M2016-02202-COA-R3-CV, 2017 WL 4457591 (Tenn. Ct. App. Oct. 5, 2017), an unreported decision which (as far as the Court can tell) has not been cited by any court for the proposition offered by Leech Tishman, is not persuasive. Leech Tishman's supposition as to what the Tennessee Court of Appeals *might* have done, if it had been faced with different facts, does not change the existing precedent the Court must follow.

¶¶ 118-119). As such, Plaintiffs argue, there was an attorney-client relationship between Plaintiffs and Defendants, and Defendants breached their duties to Plaintiffs as clients. (*Id.* at ¶¶ 120-121). The Complaint alleges that when Plaintiffs sought confirmation from Mankey about the performance in Solar IV, after their investments in Solar IV (but before their investments in UIF), they did so "with the belief that Mr. Mankey was serving as an attorney for the fund and its partners, including Plaintiffs." (*Id.* at ¶ 119). Plaintiffs maintain that whether an attorney-client relationship existed between Plaintiffs and Defendants is a question of fact that cannot be determined on Leech Tishman's Motion.

Leech Tishman, on the other hand, argues that Plaintiffs' alleged status as partners in Solar IV did not create an attorney-client relationship between Plaintiffs and Leech Tishman. The law firm asserts that all its interactions with Plaintiffs were in Plaintiffs' capacities as *potential investors*, not as partners in either of the Funds. The Court notes that, even under Plaintiffs' own theory, any interactions between Plaintiffs and Defendants prior to Plaintiffs becoming investors in the Funds would not have taken place in an attorney-client relationship.

A relationship of client and lawyer arises when:

(1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either

(a) the lawyer manifests to the person consent to do so; or

(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or

(2) a tribunal with power to do so appoints the lawyer to provide the services.

Restatement (Third) of the Law Governing Lawyers § 14 (2000).

In the State of Tennessee, formation of an attorney-client relationship must be consensual, and the potential client must have a reasonable expectation that the attorney is willing to enter into

the relationship. *Rock the Ocean Prods., LLC v. Huka Prods., LLC*, No. 3:15-cv-00410, 2016 WL 10821956, at \*3 (M.D. Tenn. Oct. 26, 2016). Both the attorney and the client must consent to the representation. *Vanderschaaf v. Bishara*, No. M2017-00412-COA-R3-CV, 2018 WL 4677455, at \*5 (Tenn. Ct. App. Sept. 28, 2018). The court in *Vanderschaaf* held that an attorney's consent may be implied from his conduct. *Id*. An attorney-client relationship may arise when a prospective client expresses to the lawyer an intent that the lawyer provide legal services, and "the lawyer fails to manifest a lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." *Id.* "The attorney-client relationship is consensual and, significantly, it 'arises only when *both the attorney and the client have consented* to its formation.'" *State v. Jackson*, 444 S.W.3d 554, 599 (Tenn. 2014) (quoting *Akins v. Edmundson,* 207 S.W.3d 300, 306 (Tenn. Ct. App. 2006) (emphasis in original)). The Complaint does not allege that Mankey or Leech Tishman consented to any such representation of Plaintiffs.

Moreover, a partnership is an entity distinct from its partners. Tenn. Code Ann. § 61-1-201(a). Thus, "a lawyer who represents a partnership represents the entity rather than the individual partners unless the specific circumstances show otherwise." *Vanderschaaf*, 2018 WL 4677455, at \*5 (quoting ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 91-361 (1991)). ABA Model Rule of Professional Conduct 1.13, states that an attorney "employed or retained by an organization represents the *organization.*" According to this "entity" rule, where a lawyer represents a corporation, the client is the corporation, *not* the corporation's constituents. *McKinney v. McMeans*, 147 F. Supp. 2d 898, 901 (W.D. Tenn. 2001), *cited in Anderson v. Thompson*, No. 1:07-cv-100, 2008 WL 11342524, at \*7 (E.D. Tenn. Feb. 15, 2008).

Plaintiffs cite to a case interpreting Michigan law, not Tennessee law, to argue that whether an attorney-client relationship exists primarily focuses on the client's subjective intent. (Doc. No. 22 at 15-16) (citing *Grace v. Center for Auto Safety,* 72 F.3d 1236, 1242 (6th Cir. 1996)). But that decision is not binding upon this Court in interpreting Tennessee's law of legal malpractice.

Plaintiffs also argue that, in certain circumstances, a lawyer representing an organization may also represent any of the organization's constituents. However, they fail to show that such "certain circumstances" exist here. In the email to which Plaintiffs refer in support of their argument, Plaintiffs clearly indicate that they wish to have a "due diligence call" with Mankey prior to investing in UIF, like they did prior to investing in Solar IV. (Doc. No. 1-14 at 4). This suggests that Plaintiffs were operating at arms' length from Mankey and Mankey's (original) clients, and thus were not clients of Mankey.

In conclusion, accepting the (non-conclusory) allegations of the Complaint as true, Plaintiffs have not sufficiently alleged an attorney-client relationship. The Complaint does not allege that Mankey consented to representing or even thought he was representing Plaintiffs, and such consent is not plausibly inferable from the factual matter alleged in the Complaint. Such factual matter, instead, suggests that Mankey's interests were those of CEA and Warren; it does not suggest that Mankey nevertheless indicated duplicitously and nefariously that he was undertaking to look out for Plaintiffs' interests as their attorney. Because Plaintiffs have not alleged factual matter plausibly suggesting that they had an attorney-client relationship with Defendants, the legal malpractice claim will be dismissed.

Leech Tishman argues alternatively that Plaintiffs' legal malpractice claim is barred by the statute of limitations. Leech Tishman asserts that Plaintiffs' legal malpractice claims against Mankey had to have been brought within one year of Plaintiffs' discovery of such a claim. Tenn.

Code Ann. § 28-3-104(c). Citing the Complaint, Leech Tishman contends that Plaintiffs became aware of their alleged legal malpractice claim no later than May 23, 2017, when Plaintiffs contacted the FBI Office in Nashville and met with agents there concerning the Warren/CEA fraudulent scheme. (Doc. No. 1 at ¶¶ 69-71). Plaintiffs did not file this lawsuit until May 31, 2019, more than two years later. Plaintiffs do not dispute these facts.

A plaintiff's right to pursue a vicarious liability claim against a principal is precluded "when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal." *Taylor v. Miriam's Promise*, No. M2017-01908-COA-R3-CV, 2019 WL 410700, at *10 (Tenn. Ct. App. Jan. 31, 2019) (citing *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 106 (Tenn. 2010)).[16] Leech Tishman contends that Plaintiffs' claim against Mankey was procedurally barred by the applicable statute of limitations by the time Plaintiffs asserted the legal malpractice claim against Leech Tishman herein.

A plaintiff cannot "assert a vicarious liability claim against the principal after its right to assert a claim against the agent has become procedurally barred." *In re Regions Morgan Keegan Sec., Derivative & Erisa Litig.*, No. 2:13-cv-02841-SHM-dkv, 2015 WL 10713983, at *3 (W.D. Tenn. July 31, 2015) (quoting *Abshure,* 325 S.W.3d at 110). That limitation "reflects one of the traditional policy reasons for refusing to permit a plaintiff to pursue a vicarious liability claim

---

[16] The court in *Abshure* noted that the circumstances when it would be improper for a plaintiff to proceed against a principal for its agent's actions include: (1) when the agent has been exonerated by a finding of non-liability; (2) when the plaintiff has settled its claim against the agent; (3) when the agent is immune from suit, either by statute or by the common law; and (4) when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal. *Abshure*, 325 S.W.3d at 106.

against a principal—plaintiffs should not be permitted to engage in an encircling movement against the principal when they cannot pursue a frontal attack on the agent." *Id.*[17]

Vicarious liability may be extinguished when the underlying claims are settled with the agent, because "[i]f the agent can no longer be found liable in a judicial proceeding . . . then it automatically follows that the principal cannot be held liable, where . . . the sole basis of the cause of action against the principal is vicarious in nature." *Cunningham v. Trilegiant Corp.*, No. 3:15-cv-989, 2016 WL 10650606, at *3 (M.D. Tenn. Aug. 26, 2016) (quoting *Olympia Child Dev. Ctr., Inc. v. City of Maryville*, 59 S.W.3d 128, 135 (Tenn. Ct. App. 2001) (holding that settlement of the plaintiff's claim with the agent precluded vicarious liability of the principal regardless of the amount or adequacy of the settlement)).

Leech Tishman acknowledges that it entered into tolling agreements with Plaintiffs beginning in September 2017 (*see* Doc. No. 17-5). It argues, however, that Mankey was not a party to any of those tolling agreements, and since the legal malpractice claim is alleged against them based solely on vicarious liability (i.e., liability for Mankey's actions) and the claim against Mankey was procedurally barred before this lawsuit was ever filed, Plaintiffs' claim against Leech Tishman is likewise barred.

Plaintiffs chastise Leech Tishman for not addressing the portion of *Abshure* that states, with regard to this procedural limitation on a plaintiff's ability to pursue a vicarious liability claim against a principal, "[t]he limitation does not apply in circumstances where the plaintiff has

---

[17] For example, "[i]t is quite nearly blackletter law that a plaintiff is not permitted to pursue a claim against a principal based solely on vicarious liability when the plaintiff has settled with the agent and thereby released the agent from liability." *Lavoie v. Franklin Cty. Pub. Co., Inc.*, No. M2010-02335-COA-R9-CV, 2011 WL 1884562, at *3 (Tenn. Ct. App. May 17, 2011) (collecting cases).

initially filed a vicarious liability claim against the principal, and the plaintiff's claims against the principal's agents are *later* extinguished by operation of law." *Abshure*, 325 S.W.3d at 111 (emphasis added). Despite their continuing lengthy criticisms of Defendants' lawyers (*see* Doc. No. 22 at n. 10), Plaintiffs fail to acknowledge that, unlike in *Abshure*,[18] in this case, Plaintiffs' legal malpractice claims against Mankey were extinguished by the applicable statute of limitations *before* Plaintiffs filed this vicarious liability claim against Leech Tishman.

As the court noted in *Smith v. Holston Med. Group, PC,* No. 2:12-CV-72, 2013 WL 11478937, at *3 (E.D. Tenn. June 20, 2013), *Abshure* concerned a claim of vicarious liability premised on the acts of an identified agent, and that claim of vicarious liability was asserted at a time when the suit against the agent was *not* barred by the statute of limitations. "*Abshure* did not involve a claim of vicarious liability first raised *when suit against the relevant agent* was barred by the running of the statute of limitations." *Id*. (emphasis in original). Here, as in *Smith*, the claim (or, in *Smith,* potential claim) of vicarious liability was raised at a time when the claim against the agent was already barred.

The Tennessee Court of Appeals recently addressed *Abshure* and its relation to Tennessee's savings statute, an issue not present here. *Volodymyr Helyukh v. Buddy Head Livestock & Trucking, Inc.*, No. M2019-02301-COA-R9-CV, 2020 WL 5092827, at *2 (Tenn. Ct. App. Aug. 28, 2020). Citing *Abshure*, the court stated: "As relates to this case, the [*Abshure*] Court noted that a plaintiff may not assert a vicarious liability claim 'when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts [the] vicarious liability claim

---

[18] *See Abshure*, 325 S.W.3d at 112 ("The Abshures filed a proper vicarious liability claim against Methodist Hospital *before* their claims against Dr. Ogle were extinguished by operation of law.") (emphasis added).

against the principal.'" *Id.* (citation omitted) "In other words, a plaintiff may not assert "a new vicarious liability claim against a principal after [the plaintiff's] claims against the agent have become barred by operation of law." *Id.* (citation omitted).

Here, Plaintiffs do not dispute that their claims for legal malpractice against Mankey were barred by the applicable statute of limitations before this action was filed, and those claims against Mankey will be dismissed. For the reasons set forth in the above cases, the Court finds that Plaintiffs' vicarious liability claims against Leech Tishman for legal malpractice based upon the actions and inactions of Mankey are also barred and must be dismissed.

E. Plaintiffs as General Partners of Solar IV

Leech Tishman argues that the claims of Plaintiffs JRT Revocable Trust and SFT Revocable Trust should be dismissed because those Plaintiffs are general partners of Solar IV. The Complaint alleges that both the JRT Revocable Trust and the SFT Revocable Trust became general partners of Solar IV and Mr. Ortale and the PBO Trust became limited partners. (Doc. No. 1 at ¶ 30). Leech Tishman contends that, under both Tennessee and Wyoming law,[19] general partners are liable, jointly and severally, for all obligations of a limited partnership. Leech Tishman again asserts that Solar IV was found to be liable for the entirety of the Plaintiffs' alleged losses in the Warren lawsuit and, therefore, Plaintiffs, as general partners, are also personally liable for these losses.

As the Court has already explained, there has been no allocation of fault in the Warren lawsuit. Moreover, the claims in the Warren lawsuit are entirely different from the (surviving) claims alleged against Leech Tishman herein. Contrary to Leech Tishman's argument, these

---

[19] Leech Tishman asserts that Solar IV is a Wyoming limited partnership, citing to a paragraph in an unidentified document in the Warren lawsuit. (Doc. No. 16 at 21).

Plaintiffs (JRT Revocable Trust and SFT Revocable Trust) have *not* already been adjudged responsible for the claims asserted in this lawsuit. Moreover, Leech Tishman's statement that Plaintiffs' "only potentially viable claim" against it "would appear to be in the nature of contribution" is false.

The Court finds that Leech Tishman has failed to show that the claims of the general partners of Solar IV should be dismissed, and Leech Tishman's motion will be denied with respect to its request for such dismissal.

## CONCLUSION

For all these reasons, Mankey's Motion (Doc. No. 10) will be denied. Leech Tishman's Motion (Doc. No. 15) will be granted in part and denied in part. Plaintiffs' claims against both Mankey and Leech Tishman for legal malpractice will be dismissed, and Plaintiffs' civil conspiracy liability theory likewise will be dismissed.[20]

An appropriate Order will be entered.

*Eli Richardson*

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[20] Having dismissed Plaintiff's civil conspiracy claims, the Court need not address Plaintiff's assertion of "conspiracy jurisdiction."