IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JRS PARTNERS, GP; JRT REVOCABLE TRUST; SFT REVOCABLE TRUST; PBO 2012 IRREVOCABLE TRUST; WILLIAM PATRICK ORTALE III<br><br>Plaintiffs,<br><br>v.<br><br>LEECH TISHMAN FUSCALDO & LAMPL, LLC; BRETT MANKEY<br><br>Defendants. | Civil Action No. 3:19-cv-00469<br>Judge Eli J. Richardson<br>Magistrate Judge Jeffery S. Frensley<br><br>JURY TRIAL DEMANDED |

## REPORT OF THE SPECIAL MASTER

Pending before the Special Master (ECF 78) is plaintiffs' motion to compel approximately 290 documents totaling over 6,000 pages ("Withheld Documents") from defendant Leech Tishman Fuscaldo & Lampl, LLC ("Leech Tishman") (ECF 34). Leech Tishman claims that the attorney–client privilege protects each of the Withheld Documents from compelled disclosure, but the plaintiffs counter that the crime–fraud exception removes the privilege protection and seek an Order compelling their production. For the reasons set forth in this Report and after reviewing each of the Withheld Documents, the Special Master **GRANTS** the motion in part and **DENIES** the motion in part.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The plaintiffs were individual or entity investors in one or both of two purported investment funds offered by Clean Energy Advisors, LLC ("CEA") (ECF 1, ¶¶ 29(a)–(d), 36(a)–(d); ECF 54,

¶¶ 29, 36, at pp. 7–8). CEA was an entity registered in Wyoming with various offices, including in Nashville, Tennessee. (Plea Agreement, ¶ 10(b), ECF 21, *United States v. Warren*, Case No. 3:18-cr-00153, United States District Court for the Middle District of Tennessee (hereinafter "Plea Agreement")). Christopher Warren ("Warren"), a Florida resident (Complaint, ¶ 11, ECF 1, *JRS Partners, GP, et al. v. Warren, et al.*, Case No. 3:17-cv-01258, United States District Court for the Middle District of Tennessee), purportedly served as CEA's Chief Investment Officer. (Plea Agreement, ¶ 10(a)). Leech Tishman, a law firm with its principal office in Pennsylvania and other offices in Illinois, New York, Delaware, Texas, Florida, and California (ECF 1, ¶ 11; ECF 54, ¶ 11, at p. 4), represented and held an attorney–client relationship with CEA during the time period relevant to the instant motion. (ECF 12-1).

Warren, acting on CEA's behalf, solicited investments for two funds, identified as the Utility Solar Fund IV, LP ("Solar IV") and the CEA Utility Income Fund, LLC ("UIF") (collectively the "Funds"). The Funds allegedly held interests in solar farms in North Carolina, including purported contracts to sell energy produced by the solar farms to certain power companies. (Plea Agreement, ¶ 10(c)(i)–(iv)). Leech Tishman provided legal services to CEA, including providing general legal counsel regarding the growth of CEA's renewable energy investing and development business, and specifically regarding at least the UIF Fund. (ECF 54, ¶ 1, at p. 2; ECF 12-1, ¶ 1).

Defendant Brett Mankey, a lawyer and partner with Leech Tishman, served as CEA's primary contact with the firm. (ECF 54, ¶ 12, at p. 4; ECF 12-1, ¶ 3). At some point, John R. Tyrrell, a member and trustee of some of the plaintiffs, and plaintiff William Patrick Ortale III contacted Mankey to discuss the Funds. (ECF 1, ¶¶ 34, 43–44; ECF 54, ¶ 34, 43–44, at pp. 8, 10–11). Leech Tishman admits that Mankey and Tyrrell may have generally discussed the topics of

Warren, CEA, and the firm's experience with renewable energy, and that any statements provided to either Tyrrell or Ortale were within the scope of Mankey's employment with the firm. (ECF 54, ¶¶ 43–44, at pp. 10–11). Leech Tishman further admits that Mr. Mankey "merely repeated" to Tyrrell and Ortale information supplied to him by Warren, including portions of a purported insurance policy covering the Funds, but also certain tax ramifications of the UIF Fund obtained from the firm's tax lawyers. (ECF 54, ¶¶ 34, 50, 57–60, at pp. 8, 12–14).

Many of Warren's representations to investors in the Funds, including the plaintiffs, were false. CEA did not own or operate solar farms in North Carolina and had no contracts to sell energy to power companies. Investors in the Funds did not receive dividends as represented. Rather, Warren caused investors' funds to pay dividends to other investors as part of a Ponzi scheme, to pay himself and others exorbitant salaries, and to finance his extravagant lifestyle. Warren ultimately misappropriated millions of dollars for his personal benefit, the benefit of related entities, and his family members. (Plea Agreement, ¶ 10(c)(i)–(vi); ECF 1, ¶ 2; ECF 54, ¶ 2, at p. 1). On June 27, 2018, Warren was indicted on twelve counts of mail fraud, wire fraud, and securities fraud. (Indictment, ECF 1, *United States v. Warren*, Case No. 3:18-cr-00153, United States District Court for the Middle District of Tennessee; ECF 1, ¶ 72; ECF 54, ¶ 72, at p. 16). On December 14, 2018, Warren pled guilty to two counts of mail fraud and securities fraud. (Plea Agreement, *passim*; ECF 1, ¶ 73, ECF 54, ¶ 73, at p. 16). On June 10, 2019, the Court sentenced Warren to 108 months imprisonment, three years of supervised release, and restitution in the amount of $15,666,418.05. (Judgment, ECF 58, *United States v. Warren*, Case No. 3:18-cr-00153, United States District Court for the Middle District of Tennessee).

Leech Tishman admits, as it must, that Warren, acting on CEA's behalf, committed crimes and otherwise engaged in fraudulent conduct. (ECF 54, ¶¶ 21–24, 72–73, at pp. 6, 16). And it

3

admits that, as of August 2017, Mankey, a partner and CEA's primary contact at the firm, was aware that Warren used CEA to mastermind the Ponzi scheme and that Warren "may have been using Leech Tishman's name" as part of that criminal and fraudulent scheme. (ECF 54, ¶ 81, at p. 17). Leech Tishman denies that Mankey or the firm had knowledge of Warren's criminal or fraudulent activities prior to August 2017.

On May 31, 2019, the plaintiffs filed suit against Leech Tishman and Mankey generally alleging that these defendants misrepresented certain facts that induced the plaintiffs to invest in the Funds that Warren and CEA ran as a Ponzi scheme. The plaintiffs specifically assert claims of negligent misrepresentation, fraudulent misrepresentation, and negligent retention and supervision arising under Tennessee common law. (ECF 1, ¶¶ 86–103, 126–32). Leech Tishman denies the allegations, but the parties agree that the plaintiffs properly invoked diversity jurisdiction under 28 U.S.C. § 1332 (ECF 1, ¶ 13; ECF 54, ¶ 13, at p. 5).

On February 19, 2020, plaintiffs served requests for production of documents to Leech Tishman. Some of these document requests sought communications and other documents pertaining to the plaintiffs, the Funds, CEA, Warren, and Warren-owned entities, including documents related to Leech Tishman's provision of legal services to CEA. (ECF 34-2). On May 29, 2020, Leech Tishman supplied plaintiffs with a privilege log, and supplemented that log on July 28, 2020 (collectively the "Privilege Log"). The Privilege Log identifies the Withheld Documents that Leech Tishman objects to producing on the grounds that the attorney–client privilege protects them from compelled disclosure.[1]

---

[1] Leech Tishman did not claim that the work-product doctrine protects any of the Withheld Documents from compelled disclosure. Some of the Privilege Log entries identify "Relevance," "Relevance, Proprietary Information," or "Relevance, HIPAA" as grounds for non-production, but a decision regarding those production objections is beyond the scope the Special Master's duties. (ECF 78) (stating that the Special Master shall report "his determination as to

4

Plaintiffs' counsel conferred with Leech Tishman's counsel regarding whether the common law crime–fraud exception to the attorney–client privilege applied to the Withheld Documents thereby removing the privilege protections. Leech Tishman correctly notes that the client, here CEA, holds the privilege and that the firm could not voluntarily produce the Withheld Documents unless its client waived the privilege. On August 10, 2020, the plaintiffs filed a motion to compel production of each of the Withheld Documents, asserting that the crime–fraud exception removed the privilege shield and seeking an in camera review to make this determination. (ECF 34). Leech Tishman responded by primarily arguing that, if the crime–fraud exception requires that Leech Tishman had knowledge of Warren's criminal and fraudulent conduct, then the exception did not apply because Leech Tishman had no such knowledge. (ECF 35). The Court granted the plaintiffs' request for an in camera review (ECF 68) and, on January 5, 2021, appointed this Special Master to review the Withheld Documents and issue a report regarding whether the attorney–client privilege shelters the documents in the first instance and, if so, whether the crime–fraud exception overrides the privilege and requires production. (ECF 78).

## II.  LEGAL ANALYSIS

### A.  Choice of Law

Federal Rule of Evidence 501 provides that, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. This rule instructs that where, as here, the civil action arises under diversity jurisdiction for adjudication of state-law claims, state privilege law governs disputes involving application of the attorney–client privilege. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006);

---

whether each document is, or is not, subject to the crime–fraud exception to the attorney–client privilege as argued by the plaintiff").

5

*Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2021 WL 149841, at *2 (E.D. Tenn. Jan. 15, 2021); *EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2015 WL 13729725, at *2 (M.D. Tenn. Dec. 1, 2015). As for which state's privilege law to apply, Rule 501 implements the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 77–78 (1938) and *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97 (1941), which hold that federal courts exercising diversity jurisdiction must apply the forum state's laws, including that state's conflict-of-law rules. *Union Planters Nat'l Bank of Memphis v. ABC Records, Inc.*, 82 F.R.D. 472, 472 (W.D. Tenn. 1979); *Oreck Mfg. Co. v. Acor*, No. 06-1232-T/An, 2007 WL 9710001, at *2 (W.D. Tenn. July 20, 2007).

In this case, some of the Withheld Documents include communications involving Warren, a Florida resident; representatives of CEA, which had a Tennessee office; and Pennsylvania lawyers with Leech Tishman. As the forum state, Tennessee's conflict-of-law rules govern whether Tennessee, Pennsylvania, Florida, or some other state's privilege law governs this discovery dispute. It does not appear that any Tennessee state court has addressed in a published or electronically available opinion the applicable standard when a privilege dispute arguably implicates multiple states.[2] Nonetheless, the present dispute does not require a resolution of this conflict-of-laws issue because the plaintiffs relied upon federal privilege law without a disagreement from Leech Tishman, and it does not appear that any significant conflict exists

---

[2] One Tennessee federal court ruled that Tennessee courts would apply Tennessee privilege law in diversity actions because the forum's law governs evidence matters and that privileges "concern themselves only with matters of evidence." *Union Planters Nat'l Bank of Memphis*, 82 F.R.D. at 474. Other courts have rejected the *Union Planters* court's categorization of privilege law as essentially a procedural rule rather than a substantive right because Federal Rule of Evidence 501 identifies privilege law as substantive rather than procedural. *See, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *8, n.10 (S.D. Ill. Apr. 12, 2011). Another court applied Tennessee privilege law in a diversity action involving interpretation of a contract because, in breach-of-contract actions, Tennessee applies the law of the jurisdiction in which the parties executed the contract and the contract at issue was executed in Tennessee. *Union Ins. Co. v. Delta Casket Co.*, No. 06-0290, 2009 WL 10665128, at *1 (W.D. Tenn. Dec. 1, 2009).

between the relevant states regarding the attorney–client privilege and the crime–fraud exception. *Gov't Emps. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, at *29 (Tenn. Ct. App. June 29, 2007) ("A court need not make a choice of law if, in fact, there is no real difference or conflict between the relevant laws of the states involved.").

### B. <u>Legal Standard for Assessing the Crime–Fraud Exception</u>

In the Sixth Circuit, the jurisdictional law upon which the parties relied, the attorney–client privilege protects from compelled disclosure confidential communications between a client and lawyer made for legal-advice purposes and with the intent to keep those communications confidential. *See Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (listing the privilege elements); *Alomari v. Ohio Dep't of Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (noting that the legal-advice element "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct") (quoting *In re Cty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)); *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-01124, 2018 WL 3326814, at *2 (M.D. Tenn. Apr. 17, 2018) (following *Reed* and observing that "[i]t has long been established in the Sixth Circuit that the privilege 'does not envelop[] everything arising from the existence of an attorney–client relationship'"). The privilege encourages clients to communicate candidly with their lawyers so that lawyers can provide optimum legal advice, which overall promotes the "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

These policy reasons, however, "are completely eviscerated when a client consults an attorney not for advice on past conduct, but for legal assistance in carrying out a contemplated or ongoing crime or fraud." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986). For this reason, courts apply a crime–fraud exception to the privilege "when the otherwise protected

7

communications or materials are made in furtherance of a crime or fraud." *Id.* at 164. To establish the exception, the party seeking to employ it must first "make a prima facie showing that a sufficiently serious crime or fraud occurred." This prong requires a showing that a prudent person would have a reasonable basis to suspect the perpetration of a crime or of a fraud. *Id.* at 165–66. The exception's proponent must next "establish some relationship between the communication at issue and the prima facie violation." *Id.* Communications that merely relate to the crime or fraud are insufficient to invoke the exception; the communication must have been made with an intent to further the crime or fraud. *Id.* at 168; *see also United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997).

The Sixth Circuit standard, which the parties briefed, is consistent with Tennessee law. Under Tennessee law, the attorney–client privilege protects communications between a client and her lawyer when the communication is confidential, is made with the intent that the communication remains confidential, and pertains to the subject matter of the legal representation. *Dialysis Clinic, Inc. v. Medley*, 567 S.W.3d 314, 318 (Tenn. 2019); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002); Tenn. Code Ann. § 23-3-105. While no Tennessee court has specifically addressed whether the privilege contains a crime–fraud exception, or the elements of the exception, *see, e.g.*, *Hartford Cas. Ins. v. Calcot, Ltd.*, No. 2:07-cv-2405, 2009 WL 10699695, at *6 (W.D. Tenn. Apr. 7, 2009), courts have recognized that public policy forbids invocation of the attorney–client privilege when a client seeks counsel in reference to a contemplated crime. *Jackson v. State*, 293 S.W. 539, 540 (Tenn. 1927) (quoting *McMannus v. State*, 39 Tenn. (2 Head) 213, 215 (1858)).

Tennessee federal courts have held that Tennessee state courts would follow Sixth Circuit guidance in applying the crime–fraud exception. *Royal Surplus Lines Ins. Co. v. Sofamor Danek*

8

*Grp., Inc.*, 190 F.R.D. 505, 510–11, 515–16 (W.D. Tenn. 1999). First, the exception's proponent must make a prima facie showing that a sufficiently serious crime or fraud occurred by proving facts leading a prudent person to have a reasonable basis to suspect the perpetration of a crime or fraud. Second, the proponent must show that a sufficient nexus existed between the communication and the crime or fraud. The nexus element requires that the putatively privileged communication's intent was to further the crime or fraud. *Royal Surplus Lines Ins. Co*, 190 F.R.D. at 510–11, 515–16; *Metro Fin. Servs. Corp. v. Geller*, No. 2:13-cv-2867, 2015 WL 12910697, at *4 (W.D. Tenn. Feb. 24, 2015).

This same standard is consistent with Pennsylvania and Florida law. Pennsylvania's attorney–client privilege protects confidential communications between clients and their lawyers made for legal-advice purposes. *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011); *Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 60 (Pa. Super. Ct. 2015). The privilege gives way, however, for communications made for the purpose or in the commission of a crime or fraud, regardless whether the attorney knew of the client's crime or fraud. *In re Investigating Grand Jury of Phila. Cty.*, 593 A.2d 402, 406–07 (Pa. 1991); *Nadler v. Warner Co.*, 184 A. 3, 5 (Pa. 1936). Florida's statutory attorney–client privilege similarly protects confidential communications made in the rendition of legal services to the client, Fla. Stat. § 90.502(1)(c), but contains a crime–fraud exception that overrides the privilege when the client seeks or obtains the lawyer's services to enable the commission of a crime or fraud. *Id.* § 90.502(4)(a); *Am. Tobacco Co. v. State*, 697 So. 2d 1249, 1253 (Fla. Dist. Ct. App. 1997) (requiring the exception's proponent to make a prima facie showing that a crime or fraud occurred and noting that the privilege does not extend to communications made for the purpose of obtaining advice to commit a fraud or crime).

In sum, applying Sixth Circuit law, which is the same or similar to any other standard that might reasonably apply to this discovery dispute, the attorney–client privilege protects from compelled disclosure a client's confidential communications to its lawyers made for the purpose of the lawyer providing the client with legal advice. The crime–fraud exception removes disclosure protections from otherwise privileged communications in which the client seeks or obtains the lawyer's services and advice in furtherance of the ongoing or future commission of a crime or fraud. The party seeking to invoke the exception has the burden[3] of showing (1) a reasonable basis to suspect that a crime or fraud has occurred and (2) a sufficient nexus or relationship between the putatively privileged communications and the crime or fraud. It is insufficient to invoke the crime–fraud exception where the privileged communications merely relate to the crime or fraud. The exception requires that the privileged communications were made in furtherance of the crime or fraud.

Leech Tishman does not challenge this standard, except by asserting that the evidence does not show that the firm knew of or participated in any crime or fraud. As the plaintiffs argue, however, the crime-fraud exception does not require proof that the lawyer knew of or participated in the crime or fraud and applies regardless of the lawyer's knowledge. *See Clark*, 289 U.S. at 15 (ruling that a client who consults an attorney in the commission of a fraud "must let the truth be told" and that "[t]he attorney may be innocent, and still the guilty client must let the truth come

---

[3] The parties did not address the burden-of-proof standard that courts should apply when assessing whether a party has made a prima facie showing that a crime or fraud has occurred. The United States Supreme Court described the standard as requiring evidence "to give colour to the charge … that has some foundation in fact." *Clark v. United States*, 289 U.S. 1, 15 (1933). Some circuits, including the Sixth Circuit, interpret that standard to require a party to show probable cause that the client committed a crime or fraud. *See, e.g.*, *In re Antitrust Grand Jury*, 805 F.2d at 165–66. Other circuits require proof of a crime or fraud by the preponderance of the evidence. *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1095 (9th Cir. 2007). These varying standards may make little difference in practice, *In re Antitrust Grand Jury*, 805 F.2d at 165–66, but do not matter here because the Special Master finds that the plaintiffs proved sufficient facts that a crime and fraud actually occurred under any standard.

out"); 1 David M. Greenwald, Testimonial Privileges, § 1.54 (2019) (collecting cases supporting the proposition that the crime–fraud exception applies "regardless of whether the attorney was a knowing participant in the client's misconduct or was innocently involved in giving advice for what was thought to be a legitimate purpose"). There is no evidence in the present record that Leech Tishman knew of CEA and Warren's conduct prior to August 2017, but that inquiry is irrelevant to application of the crime–fraud exception.

### C. <u>Application of the Crime–Fraud Exception</u>

Applying this standard, the plaintiffs have met their burden of proving that CEA, acting through Warren, sought defendant's legal advice as part of an ongoing and future crime and fraud on potential investors in the Funds. Warren pled guilty to two counts of mail fraud and securities fraud arising from his actions and conduct through CEA. Warren operated CEA and its Funds as a Ponzi scheme under which he fraudulently represented to investors, including the plaintiffs, that the Funds would produce dividends when, in fact, Warren and CEA paid those so-called dividends from monies received from other investors. Warren, acting through CEA, made other, numerous false representations to potential investors in the Funds. Warren and CEA represented that CEA owned and operated solar farms in North Carolina and possessed contracts with power companies to sell energy produced from these solar farms. None of these representations were true. Warren told investors that insurance policies covered the solar farms when, in fact, no such insurance policies existed. Leech Tishman "admits that it now has a general understanding that the Funds were fraudulent." (ECF 54, ¶¶ 20–24, at p. 6). In short, the undisputed evidence in the record shows that an actual crime and fraud existed.

The plaintiffs have also proven that the majority of CEA and Warren's communications with Leech Tishman were in furtherance of the crime or fraud. CEA, acting through Warren,

11

engaged Leech Tishman as "general legal counsel relating to the growth of [CEA's] renewable energy investing and development business." (ECF 12-1, ¶ 1). The legal counsel also "most likely" included the specific topics of "Power Purchase Agreements," "Financing Transactions," "Tax Structuring," and "Negotiation/Drafting of Development Agreements." (*Id.*). Leech Tishman provided at least some drafting of or consultation on certain operating agreements and documents related to the UIF Fund that Warren later admitted was part of his Ponzi scheme to defraud investors. (ECF 54, ¶¶ 5, 32, at pp. 3, 7).

Defendant Mankey, a partner at the firm, was CEA and Warren's primary contact at Leech Tishman. (ECF 12-1, ¶ 3). Mankey, acting within the scope of his employment with Leech Tishman, communicated with some of the plaintiffs and received certain information from Warren. For example, as recited above, Leech Tishman admits that Mankey generally discussed Warren, CEA, and the law firm's experience with renewable energy. Mankey relayed information he received from Warren, regarding the non-existent insurance policies on the solar farms, to some of the plaintiffs. Mankey provided certain of the plaintiffs information regarding tax issues related to the Funds, which was one of the specific topics on which CEA engaged Leech Tishman. Leech Tishman admits that, after Mankey learned of Warren's Ponzi scheme, Mankey stated that Warren "may have been using Leech Tishman's name." (ECF 54, ¶ 81, p. 17). These facts sufficiently prove that Warren and CEA used Leech Tishman as a conduit for their fraudulent activities and otherwise to further their criminal and fraudulent activities.

To compel production of the putatively privileged documents that comprise the Withheld Documents under the crime–fraud exception, each communication must further Warren and CEA's criminal or fraudulent activities. The Special Master, upon review of the Withheld Documents, finds that (1) Leech Tishman must produce some of the Withheld Documents because

12

they are not privileged in first instance; (2) Leech Tishman must produce some of the Withheld Documents because the crime–fraud exception removes the privilege protection; and (3) Leech Tishman's privilege objection remains unbroken as to some Withheld Documents because there is insufficient evidence that these communications were made in furtherance of a crime or fraud necessary to invoke the crime–fraud exception. These specific findings are set forth below.

## III. RULINGS ON WITHHELD DOCUMENTS

1. <u>NOT PRIVILEGED</u>: 003632–004207; 004217; 004221–004223; 004232; 004245–004246; 004262–004264; 004302; 004619–004620; 004639–004643; 004644–004652; 004822–005007; 005008; 005601–005608; 005678; 005679; 005680–005684; 005978–005983; 005984–005985; 006034; 006174–006175; 006203; 006204; 006207; 006244; 006247; 008176; 008181–008201; 008259; 008490; 008491–008493; 008494–008496; 008497–008501; 008532–008537; 008541; 008642–008643; 008644–008645; 008646–008648; 008649–008650; 008783–009147; 009159; 009372; 009373; 009403; 009404; 009539–009547; 009579–009638; 009689–009693; 009694–009697; 009698–009703; 009704–009707; 009708–009713; 009752–009755; and 009792–009831.

Upon review, the Special Master finds that no portion of these documents contain communications between CEA representatives and Leech Tishman representatives that pertain to the receipt or provision of legal advice. For example, many of these documents relate to the administration of Leech Tishman's representation of CEA, including discussion of attorneys' fees and invoices, the terms of engagement between Leech Tishman and CEA, and conflict-of-interest issues. Others simply reflect internal Leech Tishman communications that do not provide or request legal advice, or do not reference or incorporate client communications. These pages are therefore non-privileged and are discoverable.

13

2. <u>CRIME–FRAUD EXCEPTION APPLIES</u>: Upon review, the Special Master finds that the attorney–client privilege protects the documents identified in this section in the first instance, but that the crime–fraud exception applies to remove the privilege protection. These documents generally fall into two broad categories on which CEA sought Leech Tishman's representation and legal advice and Warren, acting on CEA's behalf, engaged in criminal or fraudulent activity: (A) CEA Tax Structure and Insurance; and (B) CEA General Legal Services. Leech Tishman must produce these documents as more specifically described below.

A. <u>CEA TAX STRUCTURE AND INSURANCE</u>: 004208; 004209–004215; 004219–004220; 004224–04225; 004226–004228; 004229–004231; 004234–004239; 004240–004241; 004242– 004244; 004247 –004251; 004252–004253; 004256–004257; 004260; 004261; 004367–004371; 004372–004375; 004376–004377; 004378–004382; 004383–004384; 004387–004390; 004393; 004400; 004401–004403; 004404–004409; 004410–004416; 004633; 005471–005527; 005641; 005677; 005906; 006180–006182; 008245–008247; 008248–008250; 008251–008252; 008253–008254; 008255–008258; 008300–008302; 008303–008304; 008305–008309; 008389–008391; 008392–008393; 008394–008397; 008524–008525; 008526–008527; and 008528–008531.

These pages contain privileged attorney–client communications and legal advice regarding CEA's or the Funds' tax or other structure and purportedly relevant insurance policies. However, these pages contain legal consultation and advice that Warren and other CEA representatives sought from Leech Tishman in furtherance of a crime or fraud. Specifically, CEA engaged Leech Tishman to provide legal counsel regarding "Tax Structuring," (ECF 12-1, ¶ 1), and many of these documents discuss alleged tax-related issues connected to the Funds. Other documents in this category discuss purported insurance protection for the Funds, an item on which Warren admitted

14

that he made false statements to investors. These documents reflect communications and instructions from Warren and other CEA representatives to Leech Tishman, or legal work based on those communications and instructions, made in furtherance of a crimes and fraudulent misrepresentations. The crime–fraud exception applies to remove the privilege protection, and Leech Tishman must produce them.

    B. <u>GENERAL LEGAL SERVICES</u>: 004216; 004218; 004233; 004254–004255; 004258; 004259; 004265–004300; 004301; 004303–004320; 004385–004386; 004391; 004392; 004394–004395; 004396–004397; 004398–004399; 004417; 004418; 004419; 004420; 004421; 004422–004423; 004424; 004425; 004426–004427; 004428–004613; 004614; 004615–004616; 004617–004618; 004621–004622; 004623; 004624–004625; 004626; 004627–004628; 004629; 004630; 004631; 004632; 004634–004638; 004791; 004792–004293; 004794–004821; 005009–005061; 005062–005065; 005066–005151; 005152–005161; 005162–005205; 005206–005208; 005209–005214; 005215–005244; 005245–005272; 005273–005276; 005277; 005278–005367; 005368–005397; 005398–005441; 005442–005451; 005452–005460; 005461–005470; 005528–005600; 005612–005640; 005642–005669; 005685–005723; 005724–005725; 005726; 005727–005798; 005799–005826; 005827–005874; 005875–005891; 005907–005965; 005966–005972; 005973–005975; 005976–005977; 005986–005990; 005991–006030; 006031–006033; 006035–006038; 006127–006168; 006169–006173; 006183–006184; 006185–006200; 006201; 006202; 006205; 006206; 006208–006212; 006213–006215; 006216–006222; 006243; 006245–006246; 006248–006264; 006265–006267; 006268–008171; 008172–008175; 008177; 008178–008180; 008202–008242; 008243; 008244; 008260–008263; 008264–008266; 008267–008275; 008276–008281; 008282–008283; 008284–008286; 008287–008288; 008289–008292; 008293–008295; 008296–008299; 008310–008311; 008312–008313; 008314–008315; 008316–008317;

008318–008325; 008326–008327; 008328–008330; 008331–008333; 008334–008335; 008336; 008337–008339; 008340–008341; 008342–008346; 008347–008348; 008349–008351; 008352–008353; 008354–008383; 008384–008386; 008387–008388; 008398–008403; 008404–008431; 008432–008435; 008436–008489; 008502–008508; 008509–008511; 008512–008513; 008514–008520; 008521–008522; 008523; 008538; 008539–008540; 008542–008551; 008552–008609; 008610–008620; 008621–008631; 008632–008641; 008651–008657; 008658; 008659–008660; 008661–008663; 008664–008666; 008667–008669; 008670–008671; 008672–008673; 008674–008675; 008676–008681; 008692–008693; 008694; 008695–008696; 008697–008699; 008700–008703; 008704–008706; 008707–008708; 008709–008780; 008781; 008782; 009148–009155; 009156–009157; 009158; 009374–009402; 009548; 009549–009553; 009554–009555; 009556–009578; 009639–009640; 009641–009643; 009644–009645; 009646–009682; 009683–009688; 009714–009727; 009741–009744; 009745–009751; 009757–009759; 009760–009790; and 009838.

These documents contain attorney–client communications or internal Leech Tishman communications that incorporate client communications referencing legal consultation or advice. Warren and other CEA representatives sought this legal advice from Leech Tishman in furtherance of a crime or fraud. Specifically, CEA engaged Leech Tishman to provide legal counsel regarding general legal services, including "Commercial Agreements," "Power Purchase Agreements," "Corporate Structuring," "Corporate Governance," "International Legal and Strategic Advice," Financing Transactions'" and "Negotiation/Drafting of Development Agreements," among other things. (ECF 12-1, ¶ 1). Warren, acting on behalf of CEA, engaged in criminal and fraudulent activity in all aspects of these areas in which CEA sought legal advice and legal work from Leech Tishman, including misrepresentations about the payment of dividends, the fact that the Funds

16

operated as a Ponzi scheme, that CEA held contracts with power companies, and general structuring of the Funds. CEA thus communicated with Leech Tishman on these matters, and Leech Tishman performed legal services based on these communications, that furthered Warren's crimes and fraudulent conduct. The crime–fraud exception applies to remove the privilege protection, and Leech Tishman must produce them.

      i.     004321–004366: The document in this numbered range requires specific explanation. The email string within this document is privileged and not subject to the crime–fraud exception. The email string does not pertain specifically to Leech Tishman's representation of CEA but instead to representation of a different client. Leech Tishman may withhold documents 004321–004323 as privileged. The attachments to the email, however, pertain to the general legal services that Leech Tishman provided CEA, and the crime–fraud exception applies to them because they are based on communications made in furtherance of crimes and frauds. Leech Tishman must produce documents 004324–004366.

    3.    <u>PRIVILEGED WITHOUT EXCEPTION</u>: The attorney–client privilege protects these documents because they contain confidential communications, or reference confidential communications, between Leech Tishman and CEA representatives. Upon review, however, the Special Master finds that the crime–fraud exception does not remove the privilege and require their disclosure. While some, but not all, of these documents may in some way relate to Warren's criminal or fraudulent activity, there is no indication that these documents were created with the intent to further or promote a crime or fraud. Leech Tishman may withhold these documents from discovery based on the attorney–client privilege.

<u>004653–004790</u>. The documents in this numbered range contain an email from what appears to be defendant Mankey's personal email address to his Leech Tishman email

17

address attaching a document related to a different fund agreement. Although the Privilege Log identifies the subject of these documents as "CEA Sample," the documents do not contain communications to or from CEA representatives and there is nothing in the record indicating that these documents relate to or furthered any Warren or CEA crimes or frauds.

005670–005676. The documents in this numbered range contain communications involving or relating to CEA, but generally reflect communications and documents that pertain to Leech Tishman obtaining a conflict waiver between CEA and another firm client. While these documents relate to Leech Tishman's general representation of CEA and another client, there is no indication that these documents were created with an intent to further a crime or fraud.

005892–005905. The documents in this numbered range contain internal Leech Tishman communications, communications between Leech Tishman and CEA, and communications between Leech Tishman and another firm client pertaining to (1) a Non-Disclosure Agreement between CEA and the other firm client and (2) a conflict waiver agreement permitting Leech Tishman to represent CEA and the other firm client with respect to the Non-Disclosure Agreement. While these documents relate to Leech Tishman's representation of CEA, there is no indication that the preparation of the NDA or the conflict waiver furthered any crime or fraud.

006039–006126. The documents in this numbered range contain internal Leech Tishman emails, some dating to September 2013, and drafts of a limited liability company agreement and a private placement memorandum pertaining to what appears to be a Leech Tishman client. While the Privilege Log identifies the documents in this range as "Email re CEA," there is nothing in this document range indicating that the emails or attachments pertain to

CEA. While perhaps Leech Tishman attorneys used these drafts to create CEA-related documents, there is no evidence supporting that concept and no evidence indicating that the internal communications were made in furtherance of any crime or fraud.

006176–006179. The documents in this numbered range contain internal Leech Tishman emails attaching a 2013 internal memorandum regarding securities regulations as those regulations pertain to a firm client identified on the Privilege Log—Xplorer Energy. While perhaps Leech Tishman utilized the substance of this memorandum during its representation of CEA, there is nothing in these documents indicating that the internal communications were made in furtherance of any crime or fraud.

009160–009371. The documents in this numbered range include a single internal Leech Tishman email attaching draft documents related to another firm client, including a limited liability company agreement, private placement memorandum, limited partnership agreement, management services agreement, and subscription agreement. While the subject of the email indicates that the documents are "for use with CEA," nothing in the documents pertains to CEA or indicates that the documents or the cover communication were created in furtherance of any crime or fraud.

009405–009408. The documents in this numbered range include the 2013 internal Leech Tishman email attaching the same internal memorandum contained in 006176–006179 and fall into this category for the same reasons.

4. RELEVANCE OBJECTIONS: 009421–009531. The Privilege Log identifies "Relevance," "Relevance, Proprietary Information," or "Relevance, HIPAA" as grounds for non-production of these pages. The Special Master makes no finding as to whether Leech Tishman should produce these pages.

19

*s/ E. Todd Presnell*
E. Todd Presnell
Special Master

BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
tpresnell@bradley.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed using the Court's ECF System, and will be served upon the following counsel of record by ECF notice on March 2, 2021:

    John-David H. Thomas
    Kevin T. Elkins
    WALLER LANSDEN DORTCH & DAVIS, LLP
    511 Union Street, Suite 2700
    Nashville, TN 37219
    JD.Thomas@wallerlaw.com
    Kevin.Elkins@wallerlaw.com
    *Attorneys for Plaintiffs*

    Fred C. Statum, III
    Caralisa Connell
    Manier & Herod, PC
    1201 Demonbreun Street, Suite 900
    Nashville, TN 37203
    fstatum@manierherod.com
    cconnell@manierherod.com
    *Attorneys for Defendant Leech Tishman*

    Gina Marchetti, Jr.
    Charles Michels
    TAYLOR, PIGUE, MARCHETTI & BLAIR, PLLC
    2908 Poston Avenue
    Nashville, TN 37203-1312
    gmarchetti@tpmblaw.com
    Cmichels@tpmblaw.com
    *Attorneys for Defendant Brett Mankey*

*s/ E. Todd Presnell*
E. Todd Presnell
Special Master