IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JRS PARTNERS, GP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:19-cv-00469 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| LEECH TISHMAN FUSCALDO & | ) | |
| LAMPL, LLC, et al., | ) | |
| | ) | |
| Defendants. | | |

## MEMORANDUM OPINION

Pending before the Court is Defendant Brett Mankey's Motion to Dismiss (Doc. No. 95), supported by a Memorandum in Support (Doc. No. 96). Also pending before the Court is Defendant Leech Tishman Fuscalo & Lampl, LLC's Second Motion to Dismiss (Doc. No. 97), supported by a Memorandum in Support (Doc. No. 98). Plaintiffs filed an omnibus response to both motions (Doc. No. 99, "Response"), and each Defendant filed a respective reply (Doc. Nos. 100, 101). For the following reasons, each of the motions (Doc. Nos. 95, 97) will be GRANTED in part and DENIED in part.

## BACKGROUND

### I. Factual Background

This case is one of several lawsuits arising from a complicated Ponzi scheme through which Chris Warren and others perpetrated securities fraud via their promotion and sales of (purported) securities in two purported—but entirely fictitious—investment funds run by Warren and a company called Clean Energy Advisors ("CEA"). In this action, Plaintiffs have sued Brett Mankey, an attorney who was formerly a partner with the law firm of Leech Tishman Fuscaldo &

Lampl ("Leech Tishman") in Philadelphia, Pennsylvania, as well as Leech Tishman. Plaintiffs assert claims for negligent and fraudulent misrepresentations, civil conspiracy, legal malpractice, and (against Leech Tishman only) negligent retention and supervision. The case was filed in this Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). (Doc. No. 1 at 5).

Plaintiffs allege that Defendants made certain misrepresentations to Plaintiffs in connection with Plaintiffs' investments in two of the fictitious investment funds, specifically the Utility Solar Fund IV ("Solar IV") and the CEA Utility Income Fund ("UIF") (together, "the Funds"). Plaintiffs contend that prior to making their investments in the Funds, they spoke with Mankey, who represented CEA and the Funds, to confirm that the Funds were legitimate and valid investments. Plaintiffs assert that Mankey falsely represented that (1) the Funds were in fact legitimate, (2) the Funds' operations were up and running, (3) the Funds were insured through various insurance policies, and (4) Plaintiffs could recognize certain tax benefits from investments in the Funds. (*Id.* at 3). In truth, Plaintiffs allege, Defendants "had no idea if the statements they made to Plaintiffs were accurate and were relying solely on the unchecked representations of the mastermind of the scheme." (*Id.* at 1). Plaintiffs contend that they relied on Mankey's misrepresentations and, had Defendants "told Plaintiffs the truth," Plaintiffs never would have invested in the Funds. (*Id.*).

## II. **Procedural Background**

On October 2, 2020, the Court denied Mankey's Motion to Dismiss (asserting a lack of personal jurisdiction) and granted in part and denied in part Leech Tishman's Motion to Dismiss. The Court dismissed Plaintiffs' claims against Leech Tishman (and also against Mankey, *sua sponte*) for legal malpractice and civil conspiracy. *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, No. 3:19-CV-00469, 2020 WL 5877131 (M.D. Tenn. Oct. 2, 2020), reconsideration denied, No. 3:19-CV-00469, 2021 WL 2021436 (M.D. Tenn. May 20, 2021). On

May 20, 2021, the Court denied Plaintiffs' motion to reconsider its October 2, 2020 order. (Doc. No. 90). On May 17, 2021, with leave of the Court,[1] Plaintiffs filed an Amended Complaint, which asserted two new claims of securities fraud violations, re-asserted the conspiracy claim that the Court had previously dismissed on Defendants' first Rule 12(b)(6) motions, and included its other state law claims that were included in its original complaint and had not been dismissed on the Rule 12(b)(6) motions. (Doc. No. 88). Thus, Plaintiffs' Amended Complaint contains the following claims:

    i. Violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 Against All Defendants (Count I)
    ii. Violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78t Against All Defendants (Count II)
    iii. Negligence against Defendant Leech Tishman (Count III)
    iv. Negligent Misrepresentation against all Defendants (Count IV)
    v. Fraudulent Misrepresentation against all Defendants (Count V)
    vi. Civil Conspiracy against all Defendants (Count VI)
    vii. Negligent Retention and Supervision against Defendant Leech Tishman (Count VII)

(*Id*.). On June 30, 2021, Mankey and Leech Tishman separately filed the now-pending motions to dismiss (Doc. Nos. 95, 97) seeking to dismiss Plaintiffs' Amended Complaint in its entirety.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-

---

[1] Such leave was granted via an order of the assigned magistrate judge issued earlier that same day (Doc. No. 87). Defendants never requested review of that order by the undersigned district judge.

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary

judgment. *Doe v. Ohio State Univ.,* 219 F.Supp.3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

## ANALYSIS

### I. Plaintiffs' Federal Securities Exchange Act Claims

In Plaintiffs' Amended Complaint, Plaintiffs assert for the first time two federal securities fraud claims against both Defendants: violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 (Count I), and violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t (Count II). Each Defendant argues that these claims are time- barred by both the relevant statute of limitations and the statute of repose. (Doc. No. 96 at 15; Doc. No. 98 at 10-11).[2] Leech Tishman additionally argues that Plaintiffs fail to adequately plead each element of these claims.

---

[2] Defendants additionally argue that these claims fail on the merits. Because the Court finds that Plaintiffs' claims are time-barred, it will not reach these arguments.

*A. Section 1658(b)(2)'s Statute of Repose Bars Plaintiffs' Federal Claims Against Mankey*[3]

In the past, the undersigned has noted that "[s]tatutes of limitations are distinct from statutes of repose."[4] Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1018 (1997). And he has offered the following general, if not comprehensive, explanation of the distinction between the two: "The former generally limit the time for bringing a claim after it accrues, while the latter limit the time during which a claim can accrue in the first place. A statute of repose sets forth a period of repose, a given time span after the defendant's wrongful act in which a claim must accrue [and be filed] or be barred." *Id.* In other words, unlike a limitations period, a repose period for a claim can expire even before the claim ever accrued, *i.e.*,

---

[3] The Court agrees with Plaintiffs that the Tolling Agreement entered into by Leech Tishman (and not Mankey individually) saves Plaintiffs' federal securities-fraud claims against Leech Tishman from being found untimely. The Court previously found in its prior Memorandum Opinion that this same Tolling Agreement did not save Plaintiffs' state law claims from being untimely. However, there, the one-year statute of limitations had expired *prior to* Leech Tishman entering into the Tolling Agreement. That is not the case with Plaintiffs' federal claims that have a two-year statute of limitations and five-year statute of repose.

[4] The undersigned will highlight a few important points regarding the terminology used herein with respect to statutes of limitation in particular, by reference to part of what he wrote years ago regarding the terminology related to this area of the law:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.

> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period" refers to the length of time- the specific number of days, months, or years in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period. To say that limitations "applies" is to say that, under limitations law, a claim is time-barred. "Limitations law" refers to the entire body of rules, both statutory and judge-made, by which courts determine whether limitations applies in a given case.

Eli J. Richardson, *supra*, at 1017–19. When using his own words, the undersigned intends to stick generally to this terminology, with the caveat that the caselaw he quotes may not do so and thus may be less precise or looser in their terminology; in particular the case law often uses "statute of limitations" when "limitations period" would be the more precise term in the context at issue.

even before the claimant ever had a claim that had ripened to the point where the claim could have been brought to begin with. As the Supreme Court has put it, a statute of repose "mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued," and so it "can prohibit a cause of action from coming into existence." *CTS Corp. v. Waldburger*, 573 U.S. 1, 16 (2014). A statute of repose is "therefore equivalent to a cutoff, in essence an absolute bar on a defendant's temporal liability." *Id*. (internal citations and quotation marks omitted).

Count I alleges that Mankey and Leech Tishman committed securities fraud in violation of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, which "prohibit fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." *Zaluski v. United Am. Healthcare Corp*., 527 F.3d 564, 570 (6th Cir. 2008) (internal citations and quotations omitted). "The statute of repose relevant to Section 10(b) claims is contained in 28 U.S.C. § 1658(b)." *In re Teva Sec. Litig*., 512 F. Supp. 3d 321, 332 (D. Conn. 2021). Section 1658(b) reads:

> (b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws ... may be brought not later than the earlier of –
>
>> (1) 2 years after the discovery of the facts constituting the violation; or
>> (2) 5 years after such violation.

28 U.S.C. § 1658(b). "Courts uniformly treat Section 1658(b)(1) as a statute of limitations and Section 1658(b)(2) as a statute of repose." *In re Teva Sec. Litig*., 512 F. Supp. 3d at 332 (citing *In re BP PLC Sec. Litig*., 341 F. Supp. 3d 698, 704 (S.D. Tex. 2018)); *see also Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 787 (6th Cir. 2016) (explaining that the language in 28 U.S.C. § 1658(b)(2) creates a statute of repose).

The parties do not dispute that the five-year statute of repose applies, but the parties disagree about what constitutes a "violation" that starts the five-year period of repose. Plaintiffs maintain that the period of repose begins to run on the date of the sale of the securities. (Doc. No. 99 at 28-29).[5] Mankey argue that the period of repose begins to run on the date of the last alleged misrepresentation. (Doc. No. 96 at 16-17). Neither the United States Supreme Court nor the Sixth Circuit has decided the issue. However, in the view of all circuit courts that have taken up the issue of when the repose period of Section 1658(b)(2) begins to run, it begins to run from the date of the defendant's alleged fraudulent misrepresentation or omission.

In *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189 (3d Cir. 2007), the Third Circuit addressed the following question: "when did . . . § 1658(b)(2)'s statutes of repose begin to run— at the time of Exxon's alleged misrepresentation (the March 1999 proxy statement) or at the time its merger with Mobil was consummated (late November 1999)." *Id.* at 199. The Court concluded that:

> while it is true that for a § 10(b) claim to 'accrue' there must be an exchange of securities . . . and only then do plaintiffs suffer any actual injury, nevertheless the specific acts targeted by a § 10(b) cause of action are fraudulent statements themselves. It therefore is more consonant with the traditional understanding of how a statute of repose functions for the repose periods of § 9(e) and § 1658(b)(2) to begin from the date of Exxon's alleged misrepresentation: the March 26, 1999, proxy statement.

*Id.* at 200.

In *McCann v. Hy-Vee, Inc.*, 663 F.3d 926 (7th Cir. 2011), the Seventh Circuit cited the Third Circuit's decision in *Exxon* and likewise held that the repose period "runs from the date of the fraud rather than the date of the injury." *Id.* at 932. In so ruling, the Seventh Circuit rejected an

---

[5] When citing herein to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page — of —") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

argument similar to the one that Plaintiffs make here: that tying the date that the repose period begins to run to the date of the sale is "logical" because "[t]here can be no liability without a sale." (Doc. No. 99 at 28-29). In *McCann*, the court explained:

> Interpreting "violation" in subsection (2) to mean the completed tort would produce its own anomalies. Imagine a person who bought General Motors stock in 1935 allegedly on the basis of a deliberately false oral assurance, communicated privately by a GM official, that GM would never bargain with a union. In 2009, when GM goes bankrupt, at least in part because of contracts it had negotiated with the auto workers union governing health benefits, the buyer's granddaughter (his heir) sues for securities fraud. The alleged misrepresentation, having been private, did not affect the stock price until (let us say) 2008, and so any harm from it did not occur until then. If the five-year deadline of subsection (2) began its count down in 2008, the outer limit for suing would be 2013—78 years after the alleged misrepresentation was made—if "violation" in section 1658(b)(2) is the completed statutory tort.

*McCann*, 663 F.3d at 931. Further, the court described "[a] statute of repose [as] strong medicine, precluding as it does even meritorious suits because of delay for which the plaintiff is not responsible." *Id*. at 930.

In *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016), the Second Circuit similarly held (albeit without much analysis) that the plaintiff's Section 10(b) and Rule 10b–5 claims were time-barred under Section 1658(b)(2)'s five-year statute of repose because the plaintiff failed to allege that the defendants made any misrepresentation within five years of the filing of the plaintiff's complaint. *Id*.

Although the Sixth Circuit has also not ruled on the precise issue of when Section 1658(b)(2)'s statutes of repose begin to run, in dicta in an opinion analyzing the time-limiting language of the Electronic Funds Transfer Act, the Sixth Circuit has acknowledged that the Section 1658(b)'s repose period began running "5 years after such violation" and explained that "[b]ecause Congress created a separate, shorter limitations period that starts to run once the plaintiff has reason to know that he has a claim, it makes sense to treat the violation that triggers the five-year time bar

as encompassing only the defendant's fraudulent conduct." *Wike v. Vertrue, Inc.*, 566 F.3d 590, 596 (6th Cir. 2009).

The Court finds the above-discussed authorities persuasive and agrees that the most logical interpretation of Section 1658(b) is to treat the triggering event for the repose period to begin running as the date of the last alleged misrepresentation. This interpretation makes sense when considering that statutes of repose by their very nature are geared specifically to the *acts* of the defendant—such as, in Section 1658(b)(2), the defendant's "violation"—rather than to the liability for those acts; in other words, they turn on the timing of the defendant's acts, and not on the timing of the coalescing of whatever circumstance lead to the accrual of a claim based on those acts. As one court explained:

> Statutes of repose are measured from the time a defendant took a particular action, not from the accrual of a claim based on that action. *See Beard v. J. I. Case Co.*, 823 F.2d 1095, 1097 n.1 (7th Cir. 1987). "A statute of repose . . . limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins [to run] when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." 54 C.J.S. Limitations of Actions § 5 (2005).

*Levine v. Bally Total Fitness Holding Corp.*, No. 06 C 1437, 2006 WL 8460936, at *8 (N.D. Ill. Sept. 29, 2006); *see also Sec'y, U.S. Dep't of Lab. v. Preston*, 873 F.3d 877, 883 (11th Cir. 2017) ("Whereas a statute of limitations establishes a time limit 'based on the date when the claim accrued,' a statute of repose bars 'any suit that is brought after a specified time since the defendant acted,' without regard to any later accrual.").

By contrast, what Plaintiffs are really arguing is that the period of repose should run from the time of an event (the sale or purchase of a security) that is necessary for a securities fraud claim to accrue, *i.e.*, come into existence. But this is inconsistent with the very function of a statute of

repose; as noted above, a statute of repose "mandates that there shall be no cause of action beyond a certain point, even if no cause of action has yet accrued," and so it "can prohibit a cause of action from coming into existence." *CTS Corp. v. Waldburger*, 573 U.S. 1, 16 (2014).

For all of these reasons, this Court will join the majority of courts (and an unanimity of circuit courts) that hold that Section 1658(b)(2)'s five-year repose period begins to run from the date of the defendant's last alleged fraudulent misrepresentation. *See* Thomas Lee Hazen, 4 Law Sec. Reg. § 12:157 (2016) ("The apparent majority of courts hold that the five-year period begins to run from the date of the misrepresentation.").

Here, as Mankey points out, the last alleged misrepresentation committed by Mankey, or any other person associated with Leech Tishman, occurred, at the latest, on September 7, 2015. On August 28, 2015, Mankey spoke with Plaintiff William Patrick Ortale, III via telephone about CEA and the Solar IV. Thereafter, they communicated through follow-up emails regarding the subject of the telephone call (*i.e*., CEA and Solar IV), the last of which was sent on September 7, 2015. (Doc. No. 88 ¶ 53-60, 126; Doc. No. 1-15). Plaintiffs filed their motion to amend their complaint (seeking to add the federal securities fraud claims) on November 27, 2020, (Doc. No. 61), more than five years after any alleged misrepresentation or omission that Mankey could have made, as the Complaint does not allege that Mankey had any communications with Plaintiffs after September 7, 2015. Thus, it appears preliminarily to the Court that Count I as to Mankey is barred by the statute of repose, but for the moment the Court will hold open the possibility that the Court should draw no such conclusion at the motion-to-dismiss stage, pending consideration of Plaintiffs' below-referenced argument that any such conclusion would be premature at this stage.

Plaintiffs do not dispute that if the Court were to find that the repose period began running from the date of the last alleged misrepresentation (as the Court has done despite Plaintiffs urging

to the contrary), then their federal claims are (presumptively) untimely. Rather, Plaintiffs argue that the Court should not dismiss the federal claims because (1) Federal Rule of Civil Procedure 15(c)(1) allows for relation back of the federal claims to the time of the filing of the original complaint (which was filed within the five-year-repose-period), and (2) whether the statute of repose period expired in this case before the claims were filed is a factual issue not appropriate for decision on Defendants' Rule 12(b)(6) motions.

*1. Does the relation back doctrine apply to save Plaintiffs' otherwise untimely claim?*

As Plaintiffs point out, Rule 15(c)(1) (which codifies the relation-back doctrine) allows for relation back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Plaintiffs argue that "[b]ecause the misrepresentations that give rise to the securities fraud claims were previously alleged, the addition of the claim relates back to the original filing date," which was within the five-year-repose-period. (Doc. No. 99 at 26). Plaintiffs assert that Rule 15(c) does not "categorically" prohibit relation back "for statute of repose purposes." (*Id.* at 26 n.27). Plaintiffs contend that Rule 15(c) "makes no distinction between statutes of limitations and statutes of repose" and that "[t]he absence of limiting language within Rule 15(c) indicates that it applies to statutes of limitations and repose alike." (*Id.*). Plaintiffs then cite several unpublished district court opinions that indeed have held that a statute of repose does not affect a claim's ability to relate back under Rule 15 to the allegations in the original complaint. (*Id.* at 18 (citing cases)). Mankey argues that statutes of repose for securities fraud claims do not allow subsequent amendments to complaints to relate back. (Doc. No. 96 at 17).

The Sixth Circuit has not considered whether securities fraud claims that were filed outside of the repose period—and thus otherwise untimely—can be saved by the relation-back doctrine.

And there is not a clear consensus among the courts that have taken up the issue. *See United States ex rel. Carter v. Halliburton Co*., 315 F.R.D. 56, 64 (E.D. Va. 2016) (collecting cases). Thus, the Court is left to decide the issue as a matter of first impression. After careful consideration, the Court concludes that the relation-back doctrine cannot be invoked to save claims that otherwise would be untimely due to the expiration of a period of repose. The Court so holds because invocation of the relation-back doctrine in such a context would (1) frustrate the fundamental purpose of statutes of repose and (2) be improper under the Rules Enabling Act.

First, the Court finds that relation-back under the present circumstances would torpedo the very purpose of statutes of repose, which is to "give more explicit and certain protection to defendants." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*., 137 S. Ct. 2042, 2049 (2017). Statutes of repose "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time" and they "grant complete peace to defendants . . . [offering] defendants full and final security" after the end of the repose period. *Id*. at 2052. The expiration of a repose period can give *complete* peace to a defendant as to liability on a particular claim, however, only to the extent that such expiration extinguishes such liability *completely*—as opposed to merely *generally*, subject to one or more exceptions such as the application of relation-back doctrine. Thus, "relation-back is in tension with the principle that a statute of repose is a rigid and essential limitation on the scope of the cause of action itself—an 'absolute bar on a defendant's temporal liability.'" *De Vito v. Liquid Holdings Grp., Inc.*, No. CV156969KMJBC, 2018 WL 6891832, at *24 (D.N.J. Dec. 31, 2018) (citation omitted).

Additionally, the Court finds that its determination that the relation-back doctrine does not apply here to be in line with the Sixth Circuit's reasoning in *Stein v. Regions Morgan Keegan Select High Income Fund, Inc*., 821 F.3d 780 (6th Cir. 2016), where it held that tolling of Section

1658(b)'s statute of repose was prohibited. In *Stein*, the Court explained that "statutes of repose give priority to defendants' right to be free of liability after a certain absolute period of time (rather than plaintiffs' ability to bring claims)[.]" *Id.* at 794. The court also explained that Section 1658(b)'s statute of repose is "unequivocal in extinguishing liability." *Id*. This same reasoning supports the Court's holding herein that a securities fraud claim filed outside of the repose period cannot relate back to an earlier filed complaint. This is because, as to any defendant in a pending suit as to which the repose period expired after the filing of the suit, the statute of repose would not extinguish securities fraud liability "unequivocally" (or, as noted above, "completely") if it is extinguished only conditionally, *i.e.*, conditioned on the uncertain possibility that the relation-back doctrine ultimately proves inapplicable in that particular case. In other words, if the presumptive effect of the expiration of a statute of repose is subject to the legally possible application of the relation-back doctrine in a particular case, then the expiration of the statute of repose in that case simply does not serve to extinguish liability "unequivocally" in that case—in which case the statute of repose simply is not functioning the way a statute of repose (almost by definition) functions. The Court is loath to hold it is legally possible for the relation-back doctrine to trump the operation of a statute of repose in a manner that suggests that the statute of repose somehow is not really a statute of repose. So absent strong countervailing reasons to so hold, the Court will not do so. And ultimately it does not perceive such reasons.

The best possible reason would be to give courts discretion to allow plaintiffs leeway under certain (plaintiff-sympathetic) circumstances to bring claims that substantively are potentially meritorious. But as noted in *Stein*, "statutes of repose give priority to defendants' right to be free of liability after a certain absolute period of time (rather than plaintiffs' ability to bring claims)[.]" *Id.* at 794. In *Stein*, the court found that this mean that the statute of repose trumped the doctrine

of tolling—which, like the relation-back doctrine, would serve to potentially enable a plaintiff to bring potentially-meritorious claims even if they otherwise were time-barred. The Court does not see why a statute of repose should not likewise trump the relation-back doctrine.

Additionally, allowing securities fraud claims barred by Section 1658(b)'s repose period to relate back would violate the Rules Enabling Act. As one district court astutely explained when examining Rule 15(c)'s effect on Section 1658(b)'s statute of repose:

> [B]ecause relation-back involves the application of a federal civil rule, Rule 15(c), it implicates the Rules Enabling Act. See 28 U.S.C. § 2072(b). The Act grants the Supreme Court "the power to prescribe general rules of practice and procedure," including the Federal Rules of Civil Procedure, but with an important limitation: Such rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(a), (b). Accordingly, the Rules Enabling Act forbids any interpretation of Rule 15(c) that would "abridge, enlarge or modify any substantive right," and "counsel[s] against adventurous application of" Rule 15(c), or indeed any federal rule. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999).

> Of course, almost any procedural rule will exert some effect on substantive rights. That is understood, and permissible; a federal court may maintain procedures that permit it to function, even if there is some incidental substantive effect. Rules "which incidentally affect litigants' substantive rights do not violate [the Rules Enabling Act] if reasonably necessary to maintain the integrity of that system of rules." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 5, 107 S.Ct. 967, 970, 94 L.Ed.2d 1 (1987). *Accord Exxon Corp. v. Burglin*, 42 F.3d 948, 951 n.4 (5th Cir. 1995) (a procedural rule that only "incidentally" affects substantive rights does not run afoul of the Rules Enabling Act); *see also Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1140, 14 L.Ed.2d 8 (1965) (Rules Enabling Act not violated by incidental effect of procedural rules on "the rights of litigants who, agreeably to rules of practice and procedure, have been brought before a court authorized to determine their rights.").

> The kind of relation-back proposed here limits the effect of a statute of repose, which is a substantive component of a Section 11 claim. To permit relation-back under Rule 15(c) would violate the Rules Enabling Act because it would abridge a party's right to be free from suit under that statue of repose, which is a substantive entitlement. See Section III.b.1, supra.

> This is not a case of "incidental" effect, nor does it lie within the narrow bounds of regulation of practice and procedure in the federal courts. The limited procedural goal of relation-back is "to prevent parties against whom claims are

made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir. 1997) (quoting Fed. R. Civ. P. 15 Advisory Committee Note (1991)). Here, Rule 15(c) relation-back, far from correcting a mere "inconsequential pleading error[ ]," would abridge one party's substantive right to repose, and augment the other party's substantive right of recovery under the securities laws. This statute of repose is a substantive limitation, albeit a time-based one, on the scope of the cause of action itself. Application of Rule 15(c) would circumvent that substantive limitation in a way that would not be merely procedural and incidental. I therefore hold that relation-back does not save the Trust Plaintiff's claims.

*De Vito*, 2018 WL 6891832, at *24; *see also Fed. Deposit Ins. Corp. for Colonial Bank v. First Horizon Asset Sec. Inc.*, 291 F. Supp. 3d 364, 372 (S.D.N.Y. 2018) (declining to apply the relation-back doctrine to a complaint filed outside the repose period because doing so "would necessarily enlarge or modify a substantive right and violate the Rules Enabling Act" (internal quotations omitted)); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 263–64 (S.D.N.Y. 2019) ("allow[ing] a plaintiff to utilize Rule 15(c) to avoid the statute of repose would significantly abridge the substantive, statutory rights of [d]efendants in violation of the Rules Enabling Act."). Because statutes of repose create substantive rights in Defendants, the Court refuses to save Plaintiffs' untimely securities fraud claims via invocation of the relation back doctrine.

Accordingly, the Court will not permit Plaintiffs to use the relation back doctrine to save their untimely securities claims.

*2. Whether the Court can determine on Defendants' Rule 12(b)(6) motions whether the applicable repose period in fact expired according to the allegations of the Amended Complaint?*

Plaintiffs' final argument regarding the repose issue is that this Court "should decline to weigh into factual questions about the applicability of the statute of repose at this early stage." (Doc. No. 99 at 29). The Court above has opined (preliminarily) that determination of the repose issue at the motion-to-dismiss stage is appropriate, yet the Court will nevertheless revisit that issue

by entertaining Plaintiffs' argument. Plaintiffs argue that even if (as the Court held above) the repose period does not begin running as of the date of the sale or purchase of the securities at issue, the statute of repose is triggered for a Section 10(b) violation when "the defendant makes the misrepresentation *or omission* in connection with the sale or purchase of a security." (*Id.*). Plaintiffs then contend that "[w]hat Mankey knew, and when he knew it, are critical to determine whether any material omissions that give rise to liability under the Securities and Exchange Act took place within five years of November 17, 2020." (*Id.*). Plaintiffs assert that "[t]he privilege log provided by counsel for Leech Tishman points to such a possibility, logging numerous communications between CEA and Defendants after November 27, 2015." (*Id.*).

As the Sixth Circuit has explained, "if the allegations in the complaint affirmatively show that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate." *Cheatom v. Quicken Loans*, 587 F. App'x 276, 279 (6th Cir. 2014) (affirming Rule 12(b)(6) dismissal on statute of limitations grounds). Here, as discussed above, the allegations in the Complaint appear to affirmatively show that the claim is time-barred by the applicable repose period. The only misrepresentations and omissions that are alleged in the Complaint all occurred during the above-discussed communications with Mankey that occurred either on or prior to September 7, 2015. Rule 9(b) (which, as discussed below, applies to Plaintiffs' securities fraud claim) requires a plaintiff to plead "'the who, what, when, where, and how' of the alleged omission." *Miller v. Gen. Motors, LLC*, No. 17-CV-14032, 2018 WL 2740240, at *11 (E.D. Mich. June 7, 2018) (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012)). In the Amended Complaint, Plaintiffs allege no other omission—let alone an alleged omission that complies with Rule 9—that occurred after its last communication with Mankey so as to potentially make Count I timely.

And, in any event, even if the Court were to allow Plaintiffs to conduct further discovery before tackling the timeliness issue, the discovery Plaintiffs point to would not aid them in demonstrating that their claim is timely in any event. Plaintiffs do not contend that there may be evidence of further communications between Mankey and *Plaintiffs* in which further misrepresentations or omissions could have been made; rather they contend that there may be evidence of further communications between Mankey and *CFA* (the fraudulent company). It is unclear to the Court how these communications (communications that Plaintiffs were simply not involved in) will reveal that Mankey made misrepresentations or omissions to Plaintiffs. At most, the communications could possibly reveal that Mankey did make omissions in their prior communications with Plaintiffs, communications that occurred prior to five years before the filing of the Amended Complaint. The Complaint makes clear that the last communication between Mankey and Plaintiffs, and thus the last opportunity for Mankey to engage in misrepresentations or omissions to Plaintiffs, occurred in September 2015. Accordingly, the Court finds that it is appropriate to resolve the statute of repose issue on Mankey's Rule 12(b)(6) motions, and it rejects Plaintiffs' invitation to do otherwise.[6]

    *B. Plaintiffs' Section 10b Claim Fails to State a Claim[7]*

---

[7] Although Mankey does not raise a merits-based argument in his Motion to Dismiss, the Court *sua sponte* finds that Plaintiffs' federal claims against Mankey, in addition to being time-barred, fail to state a claim (against Mankey) and thus are alternatively subject to dismissal for the merits-based reasons set forth in this section (which were raised exclusively by Leech Tishman). "A district court does not abuse its discretion in sua sponte granting summary judgment so long as 'the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 816–17 (6th Cir. 2005) (quoting *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir.2000)). Plaintiffs were obviously on notice of the need to come forward with all of the evidence it had to defeat this merits-based argument, whichever defendant(s) happened to assert it.

As discussed above, Section 10(b) of the Act and Rule 10b-5 promulgated thereunder prohibit fraudulent, material misstatements or omissions in connection with the sale or purchase of a security. *Grae v. Corrections Corp. of Am.*, No. 3:16-cv-2267, 2017 WL 6442145, at * 13 (M.D. Tenn. Dec. 18, 2017). Liability under Rule 10b-5 is implicated when an individual, in connection with the purchase or sale of a security, either directly or indirectly, (a) employs any device, scheme, or artifice to defraud, (b) makes any untrue or misleading statement of a material fact, or (c) engages in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 240.10b-5.6.[8]

To state a claim under Section 10(b) and Rule 10b–5(b), a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Jackson Cty. Employees' Ret. Sys. v. Ghosn*, 2020 WL 7711378, at *13 (M.D. Tenn. Dec. 29, 2020) (citing *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 469 (6th Cir. 2014) [hereinafter, "*Omnicare*"])). Stated another way, "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *Id.*

---

[8] In full, Rule 10b-5 provides as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

Plaintiffs' securities fraud claims implicate the heightened pleading standards of Federal Rule of Civil Procedure 9(b), *Jackson Cty*, 2020 WL 7711378, at *5, which requires that a party alleging fraud "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). Such a party (usually a plaintiff) must "(1) specify the statements that Plaintiffs contend were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Jackson Cty.*, 2020 WL 7711378, at *5 (citing *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 978 (6th Cir. 2018)). The Private Securities Litigation Reform Act ("PSLRA")—in particular, 15 U.S.C. § 78u–4(b)(1) and (2), respectively—requires that a plaintiff's complaint (1) specify each statement alleged to have been misleading along with the reason(s) why the statement is misleading and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *Id.*

Historically, the first two of the six elements have been notoriously difficult to articulate. As the Sixth Circuit noted a half-dozen years ago:

> Our court has covered the standards for pleading these elements many times, and yet for all of our efforts and many pronouncements, the precise requirements for sufficiently pleading them, at least in this circuit, remain somewhat hazy and muddled. Therefore, before analyzing KBC's actual allegations, we will attempt to state the doctrine simply and in a straightforward manner in the hope of clearing away any confusion.

*Omnicare*, 769 F.3d at 469. The Court herein will attempt to do likewise, relying on *Omnicare* (and whatever clarity it provided) and other extant cases.

### 1. *Failure to plead facts sufficient to establish element of scienter*

Leech Tishman argues that Plaintiffs have not properly pled the scienter required to adequately state a Section 10b claim. (Doc. No. 98 at 3-7).

"[T]he complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "Scienter" has been defined as a mental state embracing intent to deceive, manipulate, or defraud. *Jackson Cty.*, 2020 WL 7711378, at *18 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011)). "In the securities fraud context, scienter includes a knowing and deliberate intent to manipulate, deceive, or defraud, and recklessness."[9] *Id.* (citing *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016)); *see also Dougherty v. Esperion Therapeutics, Inc.*, 905 F. 3d 971, 979 (6th Cir. 2018). Whether someone made a statement with the knowledge that it was false is, at bottom, a question of someone's state of mind, which is the general subject of a scienter inquiry. *Omnicare*, 769 F.3d at 471.

The Supreme Court has set forth a framework for analyzing the scienter element as follows:

> We establish the following prescriptions: First, faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true . . . .

> Second, courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.

> Third, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences . . . .

> The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts? To determine whether the plaintiff has alleged

---

[9] Under the general PSLRA standard, a complaint may allege scienter based on "either knowing falsity or recklessness." *Moshell v. Sasol Ltd.*, 481 F. Supp. 3d 280, 289 (S.D.N.Y. 2020).

facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the "smoking-gun" genre, or even the "most plausible of competing inferences." . . . Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–24 (2007) (citations omitted).

In *Matrixx*, the Court provided a post-*Tellabs* explanation of how to consider scienter pleadings "holistically" in Section 10(b) cases. *See Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011) (citing *Matrixx*, 563 U.S. at 48). As the Sixth Circuit noted in *Frank*, in *Matrixx*, "[w]riting for the Court, Justice Sotomayor expertly addressed the allegations collectively, did so quickly, and, importantly, did not parse out the allegations for individual analysis." *Id.* "This is the only appropriate approach following *Tellabs*'s mandate to review scienter pleadings based on the collective view of the facts, not the facts individually." *Id.*[10] (citing *Tellabs*, 551 U.S. at 322–23 ("The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.")).

As part of that analysis, the Sixth Circuit has noted recently, nine non-exhaustive factors should be considered: (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of ancillary lawsuit

---

[10] The former method of reviewing each allegation individually before reviewing them holistically risks losing the forest for the trees. *Frank*, 646 F.3d at 961. Furthermore, after *Tellabs*, conducting an individual review of a myriad allegations is an unnecessary inefficiency. *Id.*

charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs. *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc*., 29 F.4th 802, 813 (6th Cir. 2022) (citing *Helwig v. Vencor, Inc*., 251 F.3d 540, 552 (6th Cir. 2001) (en banc)).

Leech Tishman argues that "Plaintiffs have [ ] failed to adequately plead scienter as to Mankey[.]" (Doc. No. 98 at 5). Leech Tishman asserts that "[w]hile recklessness can arguably be sufficient to satisfy a plaintiff's burden of proving the scienter element, the alleged facts must show a 'highly unreasonable conduct which is an extreme departure from the standards of ordinary care. . . . [A] mental state apart from negligence and akin to conscious disregard.'" (*Id*. (*quoting PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004))).[11] Leech Tishman argues that Plaintiffs' allegations that Mankey failed to advise Plaintiffs that he "had no idea if the statements they made to Plaintiffs were accurate and were relying solely on the unchecked representations of the mastermind of the scheme," (Doc. No. 1 at1), are assertions of mere negligence, which are not enough to plead scienter. (Doc. No. 101 at 2-3).

In response, Plaintiffs argue that they did adequately plead scienter as to Mankey. They assert:

---

[11] Leech Tishman also argues that Plaintiffs fail to plead scienter specifically to Leech Tishman. (*See* Doc. No. 98 at 5 ("In other words, the Plaintiffs must state—with particularly—facts establishing Leech Tishman's scienter independent of facts alleged as the basis for [Mankey's] actionable scienter.")). As Plaintiffs point out in their response, for purposes of 10b scienter, "[t]he state(s) of mind of any of the following are probative for purposes of determining whether a misrepresentation made by a corporation was made by it with the requisite scienter under Section 10(b): . . . *The individual agent who uttered or issued the misrepresentation*." (Doc. No. 99 at 10 (citing *Omnicare, Inc.*, 769 F.3d at 476)). Accordingly, Leech Tishman's argument is a non-starter.

As alleged in the Amended Complaint, Plaintiffs sought Mankey's confirmation of "CEA IV's status such as the total dollar amount actually closed, are the solar panels and PPAs all in place and producing the anticipated revenues, the status of the wrap insurance, etc." (D.E. 88 at ¶ 52). As the Amended Complaint makes clear, in response, Mankey confirmed that: (1) the Solar IV fund had closed to new investors with approximately $60 million of capital comprising 15 projects that had PPAs with Duke Energy; (2) all the projects were installed and producing; and (3) Travelers Insurance had provided the wrap insurance policy for the fund, which was in force and effect. (*Id*. at ¶ 54). Thereafter, Mankey continued to make specific misrepresentations about the upcoming UIF fund, the terms of the alleged insurance policy that would cover the fund, and the tax treatment that investments in the Fund would carry. (*Id*. at ¶¶ 56-66). Mankey did not tell Plaintiffs that he had not reviewed any of the underlying documents about which they sought clarification, or "that neither Mankey, nor any other attorney at Leech Tishman had seen any of the operative documents or taken any independent steps to verify the information." (*Id*. at ¶ 55). Plaintiffs' allegations that Mankey made specific representations, knowing he lacked the requisite information to make those representations, gives rise to a "powerful or cogent" inference that his actions were at least reckless.10 (*See id*. ¶¶ 4, 44, 51, 55, 66, 97, 124, 125). Considering "the complaint in its entirety . . . all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *KBC Asset Mgmt*., 769 F.3d at 473 (quoting *Tellabs*, 551 U.S. at 322).

(Doc. No. 99 at 10-11).

So the question for the Court is whether Mankey's alleged actions amount to recklessness. And not just any amount of recklessness will do. The Supreme Court has advised that reckless conduct is sufficient to satisfy the scienter requirement so long as there is a *strong inference of recklessness* in the complaint. *See Tellabs, Inc*., 551 U.S. at 323 ("in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences"). The Sixth Circuit recently explained

"Recklessness is . . . highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id*. (quoting *Frank v. Dana Corp*., 646 F.3d 954, 959 (6th Cir. 2011)). "Recklessness requires more than negligence and is 'akin to conscious disregard.'" *Id*. (quoting *Frank*, 646 F.3d at 959). "Before drawing an inference of recklessness, courts typically require 'multiple, obvious red flags,' demonstrating an 'egregious refusal to see the obvious or to investigate the doubtful.'" *Id*. (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 686–87, 695 (6th Cir. 2004)).

*City of Taylor Gen. Emps. Ret. Sys.*, 29 F.4th at 812.

In *City of Taylor*, Defendant Astec Industries, Inc. manufactured industrial equipment and sold the equipment as modular plants (factories) that manufactured wood-pellet biofuel. *Id*. at 808. "After years of reports that Astec's wood-pellet business was thriving, its sudden collapse caused investors to conclude that they had been misled." *Id*. at 809. Shareholders brought securities fraud claims against the corporation, its CEO, and two other executives based on alleged misstatements or omissions surrounding the wood-pellet business. *Id*. The Sixth Circuit found that a holistic review of the plaintiff's complaint as it pertained to the CEO's (Brock's) statements established a strong inference that he recklessly misled the plaintiff's investors. *Id*. at 813-14. The court explained that the "[p]laintiffs' allegations show[ed] that Brock was intimately aware of what was occurring at the plants. . . . Yet instead of sharing the full picture with investors, he brushed off concerns and predicted massive profits." *Id*. at 813 (citation omitted). The court stated that "a holistic review of Brock's statements reveals a theme: relentless, unfounded optimism that was contradicted by the undisclosed facts [that he was aware of]." *Id*. Additionally, Brock's suspicious "sales of his own stock strongly support[ed] a finding of sufficient scienter." *Id*. at 814. Thus, the Court concluded that "[g]iven Brock's misleading statements, knowledge of the plants' issues, and extremely suspicious stock sales, we are satisfied that plaintiffs have pleaded a strong inference of 'knowing and deliberate intent to manipulate, deceive, or defraud' or, at minimum, recklessness." *Id*.

On the other hand, the Sixth Circuit found that a holistic review of the plaintiff's complaint as it pertained to a different defendant (Silvious) revealed no strong inference of scienter. *Id*. at 815-16. The court noted that although the complaint alleged that Silvious signed off on reports to regulators and investors, the complaint "did not include allegations showing that he knowingly or deliberately intended to manipulate or was reckless." *Id*. at 815. The court explained that

[u]nlike Brock [ ], there are no allegations that he *knew* how poorly the wood-pellet plants were doing. Nor is there any circumstance, such as a suspicious stock sale, that otherwise indicates fraudulent intent. The complaint does not provide support for a claim that, in signing the reports, Silvious acted with a 'knowing and deliberate intent to manipulate, deceive, or defraud," or that his signature amounts to "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Doshi*, 823 F.3d at 1039. Although he likely could have done more to verify the reports, that failure indicates negligence at most, which cannot support a securities-fraud claim. *Id.*

*Id.* at 815-16. Thus, the Court affirmed the district court's dismissal of the § 10(b) claim against Silvious. *Id.* at 816. Thus, from this case, the Court derives the following principle: to act recklessly in making a statement, for purposes of a securities fraud claim, it is not enough that the defendant did not (and knew that it did not) take reasonable steps to check out the veracity of the statement; rather, the defendant must actually know enough about the *underlying facts* to know that the statement may be false.

Here, the allegations pertaining to Mankey are more like those pertaining to Silvious than Brock. Besides doing so conclusorily, Plaintiffs do not allege that Mankey was *aware* that Warren's companies were fraudulent. Instead, Plaintiffs base their scienter argument on Mankey's failure to verify the information that Warren was communicating to him. (*See* Doc. No. 99 at 10-11 ("Plaintiffs' allegations that Mankey made specific representations, knowing he lacked the requisite information to make those representations, gives rise to a "powerful or cogent" inference that his actions were at least reckless.")). Although Plaintiffs' allegations fairly suggest that Mankey should have done more to verify the information that he was offering to Plaintiffs, as the Sixth Circuit has explained, "that failure indicates negligence at most, which cannot support a securities-fraud claim." *City of Taylor Gen. Emps. Ret. Sys.*, 29 F.4th at 816 ("[a]lthough he likely could have done more to verify the reports, that failure indicates negligence at most, which cannot support a securities-fraud claim.").

Even accepting all of Plaintiffs' allegations in the Amended Complaint as true and viewing the allegations in the Amended Complaint holistically as the Court must do, the Court finds that Plaintiffs have failed to plead that Mankey possessed the scienter required to state a Section 10b claim. Of the nine *Helwig* factors that the Sixth Circuit has instructed district courts to consider when assessing the existence of scienter, only one could arguably apply in these circumstances: "disregard of the most current factual information before making statements." *Helwig*, 251 F.3d at 552; *see also Omnicare III*, 769 F.3d at 455, 473, 484 (applying the *Helwig* factors). And this factor does not even *strongly* favor a finding of scienter because, as discussed above, it is not inferable from the Amended Complaint that Mankey was even aware that he was making false statements or that he was disregarding the most current factual information. *See City of Taylor Gen. Emps. Ret. Sys.*, 29 F.4th at 812 ("Before drawing an inference of recklessness, courts typically require 'multiple, obvious red flags,' demonstrating an 'egregious refusal to see the obvious or to investigate the doubtful.'") (citation omitted). Further, any other indications of scienter, such as a suspicious stock sale, or a personal financial interest in the sale of the stock, is missing from the Amended Complaint.

Thus, a strong inference of scienter cannot be drawn as to Mankey, or for that matter, any other person associated with Leech Tishman, and any inference of scienter that could be made is no more plausible than a readily apparent non-fraudulent explanation for the alleged facts—that Mankey was simply negligent in failing to verify the information he was offering to Plaintiffs. *Tellabs, Inc*, 551 U.S. at 324 ("A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."). Accordingly, the inference Plaintiffs insist should be drawn from the Amended Complaint—that Mankey acted with scienter— is not as compelling as

the opposing inference once can draw from the facts alleged—that Mankey simply did not know the falsity of the representations he was making. Thus, Plaintiffs have not pled a "strong inference" of scienter and Plaintiffs' Section 10b claim will be dismissed.

### C. Plaintiffs' Section 20(a) Claim Fails to State a Claim

Count II alleges that Defendants violated Section 20(a) of the Securities Exchange Act. Where a plaintiff fails to state a claim under Section 10(b), "a Section 20(a) claim 'must also fail for want of a primary violation.'" *SRM Glob. Master Fund Ltd. P'ship*, 829 F.3d at 177 (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co*., 553 F.3d 187, 207 (2d Cir. 2009)); *see also In re SCB Comput. Tech., Inc. Sec. Litig*., 149 F. Supp. 2d 334, 356 (W.D. Tenn. 2001) ("In order to prove a prima facie case under section 20(a), a plaintiff must prove a primary violation of federal securities laws and that the targeted defendants (here, the individual defendants) exercised actual power or control over the primary violator[.]"); *see also Stein v. Regions Morgan Keegan Select High Income Fund, Inc*., 821 F.3d 780 (6th Cir. 2016) (affirming district court's holding that a Section 10(b) claim failed to state a claim where it was barred by the statute of repose).

Because the Court will dismiss the Section 10(b) claim against Leech Tishman and Mankey (albeit for different reasons), the Court will also dismiss the Section 20(a) claim against both Defendants due to Plaintiffs' failure to state a primary violation.

### II. Plaintiffs' State Law Claims

### A. Plaintiffs' Claim of Negligence (Count III)

In the Court's prior Memorandum Opinion, the Court dismissed Plaintiffs' legal malpractice claim as to both Defendants because it was barred by the applicable one-year statute of limitations. The Court found that the limitations period began running on May 23, 2017, because:

> Plaintiffs became aware of their alleged legal malpractice claim no later than May 23, 2017, when Plaintiffs contacted the FBI Office in Nashville and met with agents there concerning the Warren/CEA fraudulent scheme. (Doc. No. 1 at ¶¶ 69-71).

And because "Plaintiffs did not file this lawsuit until May 31, 2019, more than two years later," the Court held that the claims against Defendants were time-barred. The Court noted that the tolling agreement did not save Plaintiffs' claim against Leech Tishman because "the claim . . . of vicarious liability was raised at a time when the claim against the agent was already barred." (Doc. No. 39 at 30).

In their Amended Complaint, Plaintiffs assert a negligence claim against Leech Tishman only. The gravamen of the Plaintiffs' negligence claim is that Leech Tishman is responsible for the acts/omissions of certain unnamed "tax attorneys" who provided advice as to how the Plaintiffs' investment would be treated for the purposes of investment tax credits. (*See* Doc. No. 88 at ¶ 155). Leech Tishman argues that the negligence claim is time barred for the same reason the Court found that the professional negligence claim was time-barred. (Doc. No. 98 at 14-15).

Plaintiffs argue that the discovery rule serves to toll the limitations period for their negligence claim.[12] (Doc. No. 99 at 38-39). They argue

---

[12] The undersigned's observations from a quarter century ago are instructive here when considering Plaintiffs' reference here to the notion of "toll[ing]":

> The term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending

Plaintiffs' negligence claim against Leech Tishman based on the conduct of employees or agents that were undiscovered at the time of filing the Amended Complaint, other than Mankey, is tolled by the discovery rule. *See Grindstaff v. Bowman*, 2008 Tenn. App. LEXIS 323, at *16 (Ct. App. May 29, 2008) ("the statute of limitations will not run against a plaintiff 'until he discovered, or reasonably should have discovered . . . the identity of the defendant who breached the duty.'") (quoting *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982)). Plaintiffs' Amended Complaint clearly alleged that Mankey informed Mr. Ortale that questions regarding tax issues surrounding the Funds would require input from other attorneys. (D.E. 88 ¶ 150). The Amended Complaint goes on to describe how Mr. Mankey stated he passed specific tax questions on to other Leech Tishman attorneys who presumably investigated the structure and components of CEA before rendering tax advice. (*Id.* at ¶ 152-53). Yet, like Mankey, those lawyers did not review the necessary underlying documents to give the advice, and had they, they likely would have uncovered the fraud. (*Id.* at ¶¶ 153-56). The communications revealing the identity of the Leech Tishman's tax partners had been withheld as privileged prior to the filing of the Amended Complaint, and Plaintiffs have only recently learned of the identity of some of those attorneys who may have breached the duty that gives rise to Plaintiffs' negligence claim against Leech Tishman. Because any underlying claims against those individuals have not been extinguished, Leech Tishman's *Absure* argument is moot. Plaintiffs' negligence claim is timely.

(*Id.*).

The Court agrees with Leech Tishman that Plaintiffs' negligence claim is time barred. Under Tennessee law, "actions brought by third parties against attorneys for professional negligence[ ] of the sort involved in the instant case are to be considered 'malpractice' actions and fall within the statute of limitations of [Tenn. Code Ann. §] 28–3–104." *Hanson v. Rudnick & Wolfe*, 992 F.2d 1216, 1993 WL 100084, at *6 (6th Cir. 1993) (citing *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983) (applying one-year statute of limitations to claims for professional negligence by parties who had no attorney-client relationship with the

---

upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Eli J. Richardson, *supra*, at 1039-40. Plaintiffs here clearly are referring to "tolling" in the former sense, *i.e.*, the postponement of the date on which the limitations period otherwise would have begun to run.

defendant attorney); *see also Beckwith v. LBMC, P.C.*, No. M201700972COAR3CV, 2019 WL 1306201, at *2–5 (Tenn. Ct. App. Mar. 21, 2019) (explaining that even if a plaintiff's claim is not one for malpractice, "where the claim is based upon the failure of the professional to meet the requisite standards of the subject profession[,] a claim for malpractice lies" and the one-year statute of limitations for malpractice actions will be applied). The relevant statute reads:

> Actions and suits against licensed public accountants, certified public accountants, or attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort.

Tenn. Code Ann. § 28–3–104. For malpractice actions, the start date of the running of the limitations period begins is determined by the discovery rule. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). Under this rule, the limitations period begins to run when the plaintiff knows or (in the exercise of reasonable care and diligence) should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *Id.*; *Stanbury v. Bacardi*, 953 S.W.2d 671, 677 (Tenn. 1997). In legal malpractice cases, the discovery rule requires two distinct events to occur for the limitations period to begin running: (1) the plaintiff must suffer legally cognizable damage—an actual injury—as a result of the defendant's wrongful or negligent conduct, and (2) the plaintiff must have known or in the exercise of reasonable diligence should have known that this injury was caused by the defendant's wrongful or negligent conduct. *Carvell v. Bottoms*, 900 S.W.2d 23, 28-30 (Tenn. 1995).

As the Sixth Circuit has explained, "if the allegations in the complaint affirmatively show that the claim is time-barred, dismissing the claim under Rule 12(b)(6) is appropriate." *Cheatom*, 587 F. App'x at 279 (affirming Rule 12(b)(6) dismissal on limitations grounds). Here, as discussed above, the allegations in the Complaint affirmatively show that the negligence claim is time-barred

by the applicable statute of limitations. As the Court explained in its prior Memorandum Opinion when dismissing Plaintiffs' legal malpractice claim,

> Plaintiffs became aware of their alleged legal malpractice claim no later than May 23, 2017, when Plaintiffs contacted the FBI Office in Nashville and met with agents there concerning the Warren/CEA fraudulent scheme. (Doc. No. 1 at ¶¶ 69-71). Plaintiffs did not file this lawsuit until May 31, 2019, more than two years later.

(Doc. No. 39 at 27). In other words, by May 23, 2017, Plaintiffs were aware of Warren's fraudulent scheme and, thus, reasonably should have been aware that they were offered poor legal advice by Mankey, and the tax attorneys, whose advice Mankey relied on, regarding the scheme.

Although not pointed out by Plaintiffs in their Response, the Amended Complaint contains some additional allegations that suggest an effort by Plaintiffs to save their negligence claim from this fate. For instance, Plaintiffs add the allegation that after discovery (courtesy of the FBI) of the fraud, Plaintiffs began "a coordinated effort to seek redemption of their investment" and did not yet "know whether their money was lost." (Doc. No. 88 at ¶ 80). This seemingly is an attempt to allege that as of that time Plaintiffs not yet suffered an "injury" to start the running of the limitations period because they did not know for certain that their investment was "lost," whatever that means.[13] The Sixth Circuit has explained that under Tennessee law, "[f]or the purposes of the discovery rule, an actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of liability." *Americare Sys., Inc. v. Pinckney*, 635 F. App'x 305, 307 (6th Cir. 2016) (citation omitted). "But a plaintiff may also suffer an actual injury if he or she suffers 'some actual inconvenience'—such as incurring an expense, as a result of the defendant's negligent or wrongful

---

[13] The Court construes this ambiguous term narrowly (and thus in Plaintiffs' favor) to mean something like, "unable to be recovered in full: (a) by merely be requesting return of their invested funds from those holding the funds; and indeed (b) by anything less than measures requiring considerable effort." The Court notes that a narrow construction aids Plaintiffs by making more colorable the argument that whatever knowledge Plaintiffs possessed after notification from the FBI, Plaintiffs did not possess knowledge that their investment was "lost." But even with "lost" thus construed narrowly, as discussed herein, this allegation is inadequate to delay the facially apparent start date for the running of the limitations period on this claim.

act." *Id.* "A plaintiff may not . . . delay filing suit until all the injurious effects or consequences of the alleged wrong are actually known to the plaintiff." *Id.* (citing *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998)). In *Americare*, the court found that "the inconvenience, time, and expense that [the plaintiff] incurred by retaining new counsel [and the fees associated therewith] constituted an "actual injury" under the discovery rule[.]" *Id.* at 308.

In this case, the Amended Complaint alleges that on May 23, 2017, Plaintiffs learned that they had invested in a Ponzi scheme and that their money was in the hands of a fraudster. Although (according to the Amended Complaint) they did not know for certain whether their money was lost, the "coordinated effort" (Doc. No. 88 at ¶ 80) that Plaintiffs would have to go through to get their money back certainly entailed "some actual inconvenience," *Americare*, 635 F. App'x at 307, that would constitute injury and trigger the running of the limitations period. Thus, the Court finds that Plaintiffs' negligence claim is time-barred.

Further, the Court rejects Plaintiffs' argument that the limitations period should be "tolled by the discovery rule," because Plaintiffs' "negligence claim against Leech Tishman [is] based on the conduct of employees or agents that were undiscovered at the time of filing the Amended Complaint[.]" (Doc. No. 99 at 38). Although it is unclear what Plaintiffs mean by "tolled by the discovery rule," Plaintiffs appear to argue that the discovery rule somehow temporally pushes back the beginning of the running of the limitations period so far that Plaintiffs' claim actually is timely. However, it is clear from the Amended Complaint that by September 2015, Plaintiffs were aware of the *conduct* of these tax attorneys. According to the Amended Complaint, during the time that Mankey was communicating with Plaintiffs (August through September of 2015), he "stated that he consulted with other attorneys at Leech Tishman skilled in the practice of federal tax law." (Doc. No. 88 at ¶ 39). And he "then relayed this advice, provided by others at Leech Tishman, to

Plaintiffs." (*Id*.). Indeed, Plaintiffs in the Amended Complaint also reference an email, (Doc. No. 1-15), dated September 2, 2015, to Plaintiff Ortale from Mankey wherein Mankey explicitly states that "the below information was provided by our tax group." (*Id*. at ¶ 58 (citing Doc. No. 1-15 at 5-6)). Plaintiffs, hardly being in a position now to deny that by September 2015 they knew of the *conduct* of Leech Tishman tax attorneys, appear to base their tolling argument on the fact that they were not aware of the *identity* of these particular tax attorneys. But Plaintiffs do not explain how not knowing the specific identity of the tax attorneys tolls the limitations period specifically as to Leech Tishman. And the Court does not see how knowing the specific identity of these tax attorneys makes a difference in the analysis of the limitations issue (including the identification of the start date for the running of the limitations period) as to Plaintiffs' vicarious liability-based negligence claim against Leech Tishman. Accordingly, Plaintiffs' argument that the limitations period should be tolled because they did not discover, or at even have information available to them to reasonably discover, the identity of the particular attorneys in Leech Tishman's tax group is not well founded. Accordingly, the limitations period will not be tolled (i.e., have its start date pushed back later than May 2017) on the basis of the discovery rule.

Further, the Tolling Agreement also does not save Plaintiffs' claims from dismissal based on limitations, for reasons mirroring those in the Court's prior Memorandum Opinion as to why the Tolling Agreement did not save Plaintiffs' legal malpractice claim from dismissal based on limitations. (Doc. No. 39 at 28-31). There, the Court explained that the Tolling Agreement failed to save Plaintiffs' legal malpractice claim asserted against Leech Tishman because "Plaintiffs' legal malpractice claims against Mankey were extinguished by the applicable statute of limitations *before* Plaintiffs filed this vicarious liability claim against Leech Tishman [based on Mankey's acts and omissions]." (*Id*. at 30). As noted above, the gravamen of Plaintiffs' negligence claim is

that Leech Tishman is responsible for the acts and omissions of certain unnamed "tax attorneys" who provided advice on how the Plaintiffs' investment would be treated for the purposes of investment tax credits. (Doc. No. 88 at ¶ 155). This is merely another claim against Leech Tishman grounded solely in vicarious liability/respondeat superior related directly to legal work performed by its attorneys (*i.e.*, agents), this time unidentified "tax attorneys" rather than Mankey. And any claim for negligence Plaintiffs may have against those attorneys (none of which were brought, as no such "tax attorneys" have been sued) was time-barred (by limitations) before Plaintiffs' filed this lawsuit[14] asserting vicarious liability against Leech Tishman. Accordingly, for the reasons articulated in the Court's prior Memorandum Opinion (Doc. No. 39 at 28-31), the Tolling Agreement does not aid Plaintiffs here.

Therefore, Plaintiffs' negligence claim will be dismissed.

B. *Plaintiffs' Claims of Negligent Misrepresentation, (Count IV), Fraudulent Misrepresentation (Count V), and Negligent Retention and Hiring (Count VII).*[15]

Both Defendants argue that Plaintiffs' common law negligent misrepresentation and fraudulent misrepresentation claims are untimely "[f]or the same reasons Plaintiffs' malpractice claim was untimely (determined by the Court in its prior Order (Doc. No. 90)." (Doc. No. 98 at 15). Plaintiffs argue that Defendants' arguments regarding the statute of limitations are procedurally barred by Rule 12(g)(2), which "require[s] a party making a Rule 12 motion [] raise all defenses or objections available to the party at the time of the motion." (Doc. No. 99 at 5 (citing *Means v. United States Conf. of Cath. Bishops*, 836 F.3d 643, 648 (6th Cir. 2016))). Plaintiffs

---

[14] Defendants do not contest that Plaintiffs' negligence claim relates back to the time of the filing of the original complaint.

[15] The numbering of the counts here is from the Amended Complaint. The counts were numbered IV, I, II and V in the Complaint

assert that the limitations "arguments were available to Defendants when they filed their first (and in Mankey's case first and second) motions to dismiss [and] [b]ecause they were not raised by Defendants in their prior motions, they are barred by Fed. R. Civ. P. 12(g)(2)." (*Id.*). In Leech Tishman's Reply, it contends that although Plaintiffs "are technically correct," the Court should construe Defendants' Rule 12(b)(6) motion as a Rule 12(c) motion "in the interest of judicial efficiency" to avoid further delay because otherwise they will file a 12(c) motion raising these arguments anyway. (Doc. No. 101 at 2). In his Reply, Mankey does not address Plaintiffs' assertion that these arguments are procedurally barred.

Serial motions to dismiss under Rule 12 are generally not allowed. *See* Fed. R. Civ. P. 12(g)(2). Rule 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). "If a failure-to-state-a-claim defense under Rule 12(b)(6) is not asserted in the first motion to dismiss under Rule 12, then Rule 12(h)(2) tells us that it can be raised later, but only in a pleading under Rule 7, in a post-answer motion under Rule 12(c), or at trial." *Dowell v. Bernhardt*, No. 3:19-cv-00105, 2019 WL 3412255, at *5 (M.D. Tenn. Dec. 19, 2019) (Richardson, J.) (citation omitted). A motion is not a pleading under Rule 7. *Id.* (rejecting argument that a motion to dismiss is a pleading, and finding that defendant could not file a second motion to dismiss and striking the same as improper); *see also, e.g. JRS Partners, GP v. Warren*, No. 3:17-cv-01258, 2021 WL 679295, at *2 (M.D. Tenn. Feb. 22, 2021) (Richardson, J.) ("Thus, when Defendant filed her amended motion to dismiss, raising defenses that were available to her but omitted from her original motion, she violated this Rule 12(g)(2) provision . . . and therefore, the Motion should be denied."). The filing of an amended complaint does not change this outcome with respect to claims

in the amended complaint that were in the original complaint—and thus were subject to being challenged, in the motion to dismiss the original complaint, via the same defenses that the defendant seeks to bring for the first time in a motion to dismiss the amended complaint. *See W.G. Tomko, Inc. v. Franklin Cty. Bd. of Comm'rs*, 2:13–cv–0055, 2014 WL 347037, at *5 (S.D. Ohio Jan. 30, 2014) (stating that "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." (citing 5C Charles Alan Wright, Federal Practice & Procedure § 1388 at 491 (4th ed. 2009)).

The Court finds that Defendants' limitations arguments as to Plaintiffs' claims of negligent misrepresentation and fraudulent misrepresentation are barred by Rule 12(g) because those arguments could have been raised in Defendants' respective first motions to dismiss, but were not. As noted above, Defendants do not dispute that their arguments are barred by Rule 12(g). Rather, Leech Tishman asks the Court to construe its motion as one brought under Rule 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). It is indisputable that the pleadings are not closed where no defendant has filed an answer.[16] Here, neither Leech Tishman nor Mankey has filed an answer to the Amended Complaint. Thus, the pleadings in this matter are not "closed"

---

[16] Indeed, it may be true that the pleadings are not closed when not all defendants have filed an answer, even if one or more defendants have filed an answer. Although it does not appear that the Sixth Circuit has directly addressed this issue, a number of district courts in this and other circuits addressing this issue have held that pleadings are not "closed" until every defendant has filed an answer. *See, e.g., Kowall v. GMAC Mortg.*, LLC, 2012 WL 884851, at *1 (E.D. Mich. Mar.15, 2012) (pleadings do not close for purposes of a Rule 12(c) motion until defendants have filed an answer to the complaint); *Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F. Supp. 2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed.") (citing *Habeeba's Dance of the Arts., Ltd. v. Knoblauch*, 2006 WL 968642, at *2 (S.D. Ohio Apr. 10, 2006)); *Nationwide Childs.' Hosp., Inc. v. D.W. Dickey & Sons, Inc. Emp. Health & Welfare Plan*, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31, 2009) ("Thus, the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering."); *see also Nagy v. De Wese*, 705 F. Supp. 2d 456, 460 & n.4 (E.D. Pa. 2010) (collecting cases).

for purposes of Rule 12(c). Therefore the Court simply cannot treat Defendants' motions as being brought under Rule 12(c), even if so doing would foster efficiency. And because Defendants' motions are brought under Rule 12(b)(6), Rule 12(g) bars their arguments that Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims are time-barred. Accordingly, the Court will not consider them now.

For these same reasons, the Court will likewise not consider Leech Tishman's merits-based argument that Plaintiffs fail to state a claim for negligent hiring and retention claim (which is asserted solely against Leech Tishman). As Plaintiffs point out, the allegations surrounding that claim did not change between the filing of the original Complaint and the Amended Complaint, and the arguments Leech Tishman now raises could have been raised in its first motion to dismiss. Accordingly, those arguments are also barred by Rule 12(g), and the Court is prohibited from entertaining those arguments as well.

*C. Plaintiffs' Claim of Civil Conspiracy (Count VI)*

The elements of a civil conspiracy are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) resulting injury. *B&L Mgmt. Grp., LLC v. Adair*, No. 17-2197, 2019 WL 3459244, at *10 (W.D. Tenn. July 31, 2019) (citing *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). In other words, the elements of a civil conspiracy include common design, concert of action, and an overt act. *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 848 (M.D. Tenn. 2019). There must be a concerted

effort by the defendants to cause harm to the plaintiff, and the plaintiff must, in fact, suffer harm as a result of the defendants' efforts. *Id.*[17]

In its opinion on Defendants' first motions to dismiss, the Court found that Plaintiffs failed to allege "any underlying torts of CEA and Warren for which Defendants allegedly are liable." (Doc. No. 39 at 21). Thus, the Court held that Plaintiffs failed to state a conspiracy claim and dismissed the conspiracy count. Plaintiffs, with leave of the Court granted by the Magistrate Judge, re-alleged their conspiracy claim in their Amended Complaint, adding numerous factual allegations surrounding the conduct they contend was tortious. Defendants argue that even with the addition of more robust factual allegations describing Defendants' allegedly tortious conduct Plaintiffs' civil conspiracy claim fails just as before. Leech Tishman argues, among other things,

---

[17] Contrary to how the parties at times have characterized it, a claim of civil conspiracy under Tennessee law actually is not a separate cause of action. *See Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 849 (M.D. Tenn. 2019) (citing *Campbell v. BNSF Ry. Co.*, 600 F.3d 667, 677 (6th Cir. 2010); *Stanfill v. Hardney*, No. M2004-02768-COA-R3-CV, 2007 WL 2827498, at *7-8 (Tenn. Ct. App. Sept. 27, 2007); and *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004)). So if Plaintiffs did have a valid claim of civil conspiracy, that would not mean that Plaintiffs have a separate cause of action. Instead, considering the particular allegations of the Amended Complaint,

> it [would] mean[ ] that Plaintiff may proceed under the theory that, as civil conspirators, [Defendants who are not the actual tortfeasors] are liable on Count V to the same extent [that the other Defendants] are as the actual tortfeasors, and that each conspirator is liable for all damages occasioned by the actions of any of the conspirators. *Trau-Med of Am., Inc.*, 71 S.W.3d at 703 ("Upon a finding of conspiracy, each conspirator is liable for the damages resulting from the wrongful acts of all co-conspirators in carrying out the common scheme.").

*Id.* And as the Tennessee Court of Appeals has summarized this point:

> Civil [c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. *Freeman Mgmt. Corp. v. Shurgard Storage Centers, LLC.*, 461 F.Supp.2d 629, 642-643 (M.D.Tenn.2006). By participating in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors.

*Foster Bus. Park, LLC v. Winfree*, No. M200602340COAR3CV, 2009 WL 113242, at *16 (Tenn. Ct. App. Jan. 15, 2009). Accordingly, the Court will treat Plaintiffs' claim of civil conspiracy not as the assertion of a separate cause of action, but rather as an assertion that each of the Defendants should be held liable based on the alleged tortious conduct of the alleged co-conspirators. And the Court likewise will treat (and refer to) the parties' respective arguments made against (or in favor of) the claim of civil conspiracy as arguments against (or in favor of) liability on this basis.

that Plaintiffs fail to allege "that Chris Warren/CEA and Leech Tishman/Brett Mankey were both aware that the funds were fraudulent, and that both intended to perpetuate the fraudulent scheme." (Doc. No. 98 at 17). Thus, according to Leech Tishman, Plaintiffs do not allege that Defendants possessed the requisite intent to be liable under a civil conspiracy theory. The Court agrees.

"Put simply, under Tennessee law, an actionable civil conspiracy is 'a combination of two or more persons who, *each having the intent and knowledge of the other's intent*, accomplish by concert an unlawful purpose by unlawful means, which result in damage to the plaintiff.'" *RN Ent., LLC v. Clement*, 380 F. Supp. 3d 711, 721–22 (M.D. Tenn. 2019) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co*., 71 S.W.3d 691, 703 (Tenn. 2002)) (emphasis added). In its prior Opinion, the Court discussed the nature of the intent a defendant must have to be liable, under a civil-conspiracy theory, based on the conduct of co-conspirators: "'Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent.' So a defendant can be liable for the torts of others on a civil conspiracy theory only if the defendant has such intent." *JRS Partners, GP*, 2020 WL 5877131, at *10 (quoting *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A*., 489 S.W.3d 369, 395-96 (Tenn. 2015) (internal citation omitted)).

Here, in pleading their civil conspiracy claim, Plaintiffs make no allegation that Mankey or anyone else associated with Leech Tishman even knew of the fraudulent scheme, beyond the allegation—which suffers from being both conclusory, and ambivalent as to Defendants' knowledge—that Defendants "knew or should have known." Beyond this repeated but ineffectual allegation, Plaintiffs allege at best that Mankey "fail[ed] to exercise any diligence to confirm the truth or veracity of statements made by Mr. Warren[.]" (Doc. No. 88 at ¶ 189). There are simply no allegations that Mankey knew of Warren's intent to defraud, let alone that he possessed such intent to defraud himself. Thus, even if Plaintiffs did adequately allege the existence of a civil

conspiracy, Plaintiffs have not sufficiently alleged that *Defendants* (as opposed to, for example, Chris Warren and other non-Defendants) were parties to the conspiracy and thus are liable based upon it. *See B&L Mgmt. Grp., LLC*, 2019 WL 3459244, at *11 ("The parties to a civil conspiracy must have a specific intent to accomplish the underlying tort.").[18]

The just-referenced shortcomings of Plaintiffs' civil conspiracy claim can be broken down on an element-by-element basis. Plaintiffs adequately allege the first element, a common design. In an allegation supported by prior factual matter asserted in the Amended Complaint, Plaintiffs allege that "Defendants, CEA, Mr. Warren, and others had a common design to further CEA and the Funds in an effort to obtain new investors." (Doc. No. 88 at 38). So far so good.

The second element, however, makes clear that not just any common design will do, as it limits the kinds of common design that will support a claim of civil conspiracy; as indicated above, according to the second element the common design must be one to accomplish by concerted action *either* an unlawful purpose *or* a lawful purpose by unlawful means. Plaintiffs allege that the purpose of the common design was to accomplish the obtaining of new investors for CEA and the Funds. Plaintiffs allege that this is an unlawful purpose, claiming that "because CEA and the Funds were nothing more than a Ponzi scheme, the purpose of selling and marketing them was unlawful and, as a result, certain tortious acts were committed against Plaintiffs as described in this Amended Complaint." (*Id.*). But the undersigned is confident that under Tennessee law (and that

_____

[18] The Court wishes to make a point about the lack of allegations that the Court has found herein to be fatal to certain of Plaintiffs' claims, including its civil conspiracy claim. The Court does not wish to suggest that the absence of necessary allegations is the result of some oversight, sloppy drafting, or other error by Plaintiffs or their counsel. To the contrary, the Court believes (though does not have to decide) that the absence of certain necessary allegations is more likely the result of Plaintiffs' counsel's understanding that however advantageous such allegations might be to their cause, Plaintiffs lacked an adequate factual basis to put them in their complaints and thus were ethically required to omit them. If so, they are to be commended for that. But the Court must and does disagree with Plaintiffs' view that the facts Plaintiffs were able to allege were sufficient to state the claims that the Court has found to be insufficiently stated.

in the view of the Tennessee Supreme Court if it were asked today to weigh in on this), it is not enough for a defendant to have a common design with others to accomplish a purpose that is *in fact* unlawful; for the defendant to be subject to liability as a civil conspirator, the defendant must *intend or at least know of* the unlawfulness of the purpose.[19] The Court has been unable to find any Tennessee authority embracing or refuting this proposition. But the proposition appears to be supported by the above-quoted portion of *Trau-Med*, *i.e.*, that "under Tennessee law, an actionable civil conspiracy is a combination of two or more persons who, *each having the intent and knowledge of the other's intent*, accomplish by concert an unlawful purpose by unlawful means, which result in damage to the plaintiff." 71 S.W.3d at 703 (emphasis added) (internal quotation marks omitted). The Court believes that the gist of this is that the alleged co-conspirator is not actually a co-conspirator absent knowledge (if not intent) not only of what the other co-conspirator(s) intend to do, but also that what the other co-conspirator intends to do is tortious or otherwise unlawful.

This conclusion is consistent with other courts that have addressed the issue with some greater degree of specificity. It is consistent, for example, with the cogent observations of the Texas Supreme Court that the Court is confident the Tennessee Supreme Court would share even if Tennessee law and Texas law do not articulate the elements of conspiracy in an identical fashion:[20]

> We . . . have recently held that merely proving a joint "intent to engage in the conduct that resulted in the injury" is not sufficient to establish a cause of action for civil conspiracy. *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719

---

[19] The undersigned raises this question because he realizes that the applicable requirement here—to seek to accomplish an unlawful purpose—theoretically could require knowledge (and intent to further) a purpose that *happens* to be unlawful, rather than knowledge *both* of such purpose *and* that such purpose is unlawful.

[20] Indeed, the undersigned believes that the elements of civil conspiracy under Tennessee law are even more conducive to the Texas Supreme Court's conclusions than are the elements of civil conspiracy under Texas law. *See Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983) ("The essential elements [of civil conspiracy] are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."), quoted in *Juhl*, 936 S.W.2d at 644.

(Tex. 1995). Instead, "civil conspiracy requires specific intent" to agree "to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Id.* Because negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent. Therefore in *Triplex,* we held that a finding that the parties "intended to accomplish an unlawful or negligent purpose or to accomplish a lawful purpose by unlawful or negligent means" would not support liability. *Id.* at 720.

*Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). *See also Foodcomm Int'l v. Barry*, 463 F. Supp. 2d 818, 831 (N.D. Ill. 2006) (under Illinois law, "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." (quoting *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888, 894 (Ill. 1994))); *Carpenter v. Thrifty Auto Sales*, No. EDCV0902233DMGDTBX, 2010 WL 11595928, at *5 (C.D. Cal. July 30, 2010) (under California law, "[t]o be liable for civil conspiracy, defendants must have actual knowledge that a tort is planned, know of its unlawful purpose, concur in the scheme, and intend to aid in the tort's commission."). Ultimately, the Court concludes that to cabin liability based on a civil conspiracy theory the way Tennessee law (and, for that matter, the law in other states) suggests it should be cabined, civil conspiracy requires that an alleged conspirator have knowledge not only of the purpose, but that the purpose was tortious or otherwise unlawful.

Plaintiffs ultimately do not allege anything more than a joint intent—a common design—to pursue a purpose (the selling and marketing of CEA and the Funds)—that allegedly was *in fact* unlawful (and injured Plaintiffs). They offer no factual matter suggesting that Defendants—even if negligent—had knowledge that the purpose was in fact tortious or otherwise unlawful. To the contrary, Plaintiffs' allegations in this regard are phrased in a manner that avoids any suggestion that Defendants actually knew of the unlawfulness of the marketing of CEA and the Funds that was the purpose of the common design. They alleged that Defendants did various things for the purpose the marketing CEA, (Doc. No. 88 at 38-39), and that this purpose was unlawful "because

CEA and the Funds were nothing more than a Ponzi scheme." (*Id.* at 38). But Plaintiffs do not allege that Defendants *knew* they were more than a Ponzi scheme. The closest they come is when they allege, equivocally and hedging their bets, that "Defendants knew *or* should have known that CEA and the Funds were a fraudulent and illegal investment scheme." (*Id.* at 41) (emphasis added). Nor do they specifically allege unequivocally that Defendants knew that their own statements were false; the closest they come to alleging this in the civil conspiracy count is when, again hedging their bets, they allege that Defendants made "representations they knew, *or* should have known . . . were false, (*id.* at 39) (emphasis added), and when they allege that "Defendants made statements to Plaintiffs . . . that they either knew were false *or* [were made] with reckless disregard as to their truth or falsity." (*Id.* at 37) (emphasis added).[21] And to the extent that such alternative, equivocal allegations of *actual knowledge* potentially could be sufficient, they are not sufficient here because they are not supported by any factual matter in the Amended Complaint.

Plaintiffs likewise fail to sufficiently allege the overt acts required by the third element. As indicated above, the overt acts must be overt acts in *furtherance of the conspiracy*. But Plaintiffs allege only that the overt acts were taken "in furtherance of the common design between them, CEA, Mr. Warren and others." (*Id.*). But as noted above, Plaintiffs do not plausibly allege the kind of common design sufficient to constitute a conspiracy, and so they have not plausibly alleged overt acts in furtherance of a conspiracy. Likewise, Plaintiffs fail to sufficiently allege the fourth and final element; having not adequately alleged the conspiracy, they cannot possibly adequately allege injuries resulting from a conspiracy.

---

[21] The Court does not mean to suggest that if Plaintiffs had adequately alleged that Defendants knew their own representations were false, that necessarily would be sufficient to satisfy the second element of civil conspiracy; the Court need not weigh in on that proposition, because Plaintiffs did not adequately allege such knowledge.

Accordingly, based on the factual matter that was (and was not) alleged in support of Plaintiffs' civil conspiracy claim, the Court finds that Plaintiffs have failed to plausibly allege the final three elements of civil conspiracy, and thus the claim (theory) of civil conspiracy will be dismissed with prejudice.

<u>CONCLUSION</u>

It is more than understandable that Plaintiffs would cast a wide net in seeking recovery for their extremely unfortunate losses caused by an egregious Ponzi scheme. But that of course does not mean that any defendant Plaintiffs sue to obtain such recovery should be held liable, or even required to defend the lawsuit at all. Here, Defendants have presented a variety of reasons why they should not be required to defend the claims brought against them by Plaintiffs, and with respect to many of Plaintiffs' claims, Defendants' arguments have merit.

For the above-mentioned reasons, Defendants' motions to dismiss will be GRANTED in part and DENIED in part. The motions will be granted as to Plaintiffs' claims of violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 (Count I), violation of Section 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78t (Count II), negligence (Count III) and civil conspiracy (Count VI). Those claims will be dismissed with prejudice. Defendants' motions will be denied as to Plaintiffs' remaining common law claims (Counts IV, V, and VII).

An appropriate order will be entered.

_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE