IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JRS PARTNERS, GP, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 3:19-cv-00469 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| LEECH TISHMAN FUSCALDO & | ) | |
| LAMPL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court are the motions for judgment on the pleadings (Doc. Nos. 121, 123, collectively, the "Motions") filed respectively by Defendant Brett Mankey and Defendant Leech Tishman Fuscaldo & Lampl, LLC ("Leech Tishman") (collectively, "Defendants").[1] Plaintiffs filed a response (Doc. No. 127), in which they opposed both Motions. Defendant Mankey and Defendant Leech Tishman each filed a reply. (Doc. Nos. 128, 130). For the reasons stated herein, the Motions will be granted.

## BACKGROUND

The Court has set forth the relevant facts in two memorandum opinions in this case and need not repeat itself here. (Doc. No. 39 ("first motion-to-dismiss opinion"), Doc. No. 110 ("second motion-to-dismiss opinion")). The facts as stated in Doc. Nos. 110 and 39 are incorporated herein by reference. The Court will, however, provide the relevant procedural background for the purposes of understanding the present Motions.

---

[1] For the sake of clarity and conciseness, the Court refers herein individually to Defendant Mankey and Defendant Leech Tishman as "Mankey" and "Leech Tishman," respectively.

On May 31, 2019, Plaintiffs filed a complaint asserting various state law claims against Defendants. (Doc. No. 1). Mankey filed a motion to dismiss the complaint for lack of personal jurisdiction. (Doc. No. 10). Leech Tishman also filed a motion to dismiss, arguing that Plaintiffs' claims of civil conspiracy and legal malpractice should be dismissed for failure to state a claim. (Doc. No. 15). With respect to the legal malpractice claim, Leech Tishman argued that the claim was barred by a one-year statute of limitations. (*Id.*).

On October 2, 2020, the Court issued a memorandum opinion (*i.e.* the first motion-to-dismiss opinion) (Doc. No. 39) and accompanying order (Doc. No. 40) addressing both of the then-pending motions to dismiss. The Court denied Mankey's motion to dismiss but granted Leech Tishman's motion in part. Specifically, as to Leech Tishman's motion, it dismissed the legal malpractice claims on the grounds that the claims were barred by the one-year statute of limitations; it expressly made that dismissal applicable to Mankey in addition to Leech Tishman. (Doc. No. 39 at 31, 32). The Court also dismissed Plaintiffs' civil conspiracy claim. (*Id.*).

Presumably in response to the first motion-to-dismiss opinion and accompanying order, Plaintiffs filed an amended complaint. (Doc. No. 88). The amended complaint, which is now the operative pleading in the case, contains seven counts. (*Id.*):

> Count I: Violation of Section 10(b) and Rule 10b-5 of the Securities Exchange Act against all Defendants
>
> Count II: Violation of Section 20(a) of the Securities Exchange Act against all Defendants
>
> Count III: Negligence against Leech Tishman
>
> Count IV: Negligent Misrepresentation against all Defendants
>
> Count V: Fraudulent Misrepresentation against all Defendants
>
> Count VI: Civil Conspiracy against all Defendants

Count VII: Negligent Retention and Supervision against Leech Tishman

(*Id.* at 27–42). On June 30, 2021, Mankey and Leech Tishman each filed a motion to dismiss the amended complaint. (Doc. Nos. 95, 97, collectively, "second motions to dismiss"). The Court then issued a memorandum opinion (Doc. No. 110) (the second motion-to-dismiss opinion) and accompanying order (Doc. No. 111) resolving the then-pending motions to dismiss. The Court dismissed Count I, Count II, Count III, and Count VI. (Doc. No. 111). Specifically, as to Plaintiffs' claim for negligence against Leech Tishman (Count III), the Court found that the claim was barred by a one-year statute of limitations. (Doc. No. 110 at 33).

The Court also addressed Mankey's and Leech Tishman's request that the Court dismiss Counts IV (Negligent Misrepresentation) and Count V (Fraudulent Misrepresentation), and Leech Tishman's request to dismiss Count VII (Negligent Retention and Supervision). (*Id.* at 35). As the Court explained, Mankey and Leech Tishman argued that Plaintiffs' negligent misrepresentation claim (Count IV) and fraudulent misrepresentation claim (Count V) were time-barred by a one-year statute of limitations. (*Id.*). Agreeing with Plaintiffs, the Court found that Mankey's and Leech Tishman's argument that Counts IV and V are untimely to be procedurally barred under Federal Rule of Civil Procedure 12(g) because Defendants failed to raise the argument in their first motions to dismiss (Doc. Nos. 10, 15). (*Id.*). The Court declined to dismiss Count VII for the same reasons. (*Id.* at 37–38). Therefore, Counts IV, V, and VII remained pending.

In October 2022, Mankey and Leech Tishman filed the respective instant Motions. Collectively, the Motions request judgment on the pleadings under Rule 12(c) as to all three of the three remaining counts.[2] (Doc. Nos. 121, 123). Mankey requests dismissal of Counts IV and V

---

[2] Several courts have acknowledged that motions under Rule 12(c) are exempt from Rule 12(g)'s prohibition on raising arguments in successive Rule 12 motions that were not raised in the initial Rule 12 motion. *See e.g.*, *Kinney v. California*, CV 1401591, 2014 WL 12966059, at *2 (C.D. Cal. Sept. 10, 2014).

solely on the grounds that the claims are barred by a one-year statute of limitations. (Doc. No. 122). Leech Tishman argues likewise as to Counts IV and V, but also argues that Plaintiffs have failed to state a claim for fraudulent misrepresentation because (according to Leech Tishman) the facts alleged do not satisfy the heightened pleading standard required by Rule 9(b). (Doc. No. 124). As to Count VII, Leech Tishman argues that Plaintiffs have failed to state a claim on the grounds that because (again according to Leech Tishman) the facts alleged are insufficient to meet the traditional pleading standard under *Iqbal/Twombly*. (*Id.*).

As the procedural history reflects, many of the arguments for judgment on the pleadings presented in the pending Motions have been raised previously in this litigation. The Court's previous statute-of-limitations analysis contained in its first motion-to-dismiss opinion and second motion-to-dismiss opinion have bearing on the now-pending motions for judgment on the pleadings, and the Court relies on them herein where appropriate.

With this background in mind, the Court turns to the arguments raised in the pending Motions.

<u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide that after the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). "The pleadings are not closed until every defendant has filed an answer." *Nat'l Bankers Tr. Corp. v. Peak Logistics LLC*, No. 12-2268-STA-TMP, 2013 WL 3070843, at *3 (W.D. Tenn. June 17, 2013). "Rule 12(c) may be employed as a vehicle for raising several of the defenses enumerated in Rule 12(b), including the defense of failure to state a claim upon which relief may be granted." *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979); *see also*

*Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989) (citing *Amersbach*); *Becker v. Crounce Corp.*, 822 F. Supp. 386, 391 n. 4 (W.D. Ky. 1993) (citing *Amersbach*).

When that defense is raised via a motion for judgment on the pleadings, the district court evaluates the motion using the same standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 n.1 (6th Cir. 1988); *Becker*, 822 F. Supp. at 391 n.4 (citing *Amersbach*); *Kinney v. Mohr*, No. 2:13-cv-1229, 2017 WL 1395623, *4 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*); *Clemons v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3-14-1690, 2015 WL 4717398, at *1 (M.D. Tenn. Aug. 7, 2015). "Thus, the same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6)[.]" *Lacy v. Ohio Dep't of Job and Fam. Servs.*, No. 2:16-cv-912, 2017 WL 1397522, at *1 (S.D. Ohio Apr. 19, 2017) (citing *Amersbach*). Indeed, when a Rule 12(c) motion is based on an asserted failure to state a claim upon which relief can be granted, "[t]he only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss." *Ruppe v. Knox Cnty. Bd. of Educ.*, 993 F. Supp. 2d 807, 809 (E.D. Tenn. 2014) (quoting *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003)). In summary, the applicable standard for this Motion is the standard for motions under Rule 12(b)(6).[3]

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their progeny provide the applicable standard for motions to dismiss for failure to state a claim under Rule 12(b)(6). For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss,

---

[3] Consistent with this discussion, the grant of a motion under Rule 12(c) (despite its being called a motion for "judgment" on the pleadings) typically is treated resulting in a *dismissal* rather than a "judgment"—a term that sometimes carries connotations that extend beyond mere dismissal.

a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

Consistent with these principles, the Sixth Circuit has noted that "[t]o survive a Rule 12(c) motion, 'a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.'" *Hindel v. Husted*, 875 F.3d 344, 346–47 (6th Cir. 2017) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)).

As a general rule, if matters outside the pleadings are presented on a Rule 12(c) motion and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006) ("Because Plaintiff presented matters outside of the pleadings with respect to Defendant's Rule 12(c) motion, and because the district court did not exclude these matters, the district court should have converted the Rule 12(c) motion to a motion for summary judgment."). This applies even if the non-excluded material outside the pleadings is not actually relied upon or even considered at all by the court. *See id.* However, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account [without converting the motion into one for summary judgment]." *Barany-Snyder v.*

*Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

DISCUSSION

**1. Mankey's Motion for Judgment on the Pleadings**

Mankey argues that Plaintiffs' claims of negligent misrepresentation and fraudulent misrepresentation should be dismissed because they are barred by a one-year statute of limitations. (Doc. No. 122). According to Mankey, the one-year statute of limitations contained in Tenn. Code Ann. § 28-3-104(c)(1) applies to Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims because (according to Mankey) these are claims are in substance legal malpractice claims. (*Id.*) Section 28-3-104(c)(1) of the Tennessee Code states: "Actions and suits against licensed public accountants, certified public accountants, or attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort." Tenn. Code Ann. § 28-3-104(c)(1).

As discussed in the Court's first motion-to-dismiss opinion, Plaintiffs have conceded that their legal malpractice claim against Mankey is barred by the one-year statute of limitations in § 28-3-104(c)(1). (Doc. No. 39 at 31). Further, the Court in its second motion-to-dismiss opinion found Plaintiffs' negligence claim against Leech Tishman to be barred by the one-year statute of limitations. (Doc. No. 110 at 29).

Mankey's pending motion for judgment on the pleadings now requires the Court to answer the question of whether Plaintiffs' negligent misrepresentation claim and fraudulent misrepresentation claim against Mankey are similarly barred. On this question, the Court's second motion-to-dismiss opinion provides important context. In its second motion-to-dismiss opinion, the Court decided whether the negligence claim against Leech Tishman was barred by the statute

of limitations contained in § 28-3-104(c)(1). (Doc. No. 110 at 28–29). The Court explained that it had previously found (in the first motion-to-dismiss opinion) the legal malpractice claims against Leech Tishman to have accrued by May 23, 2017. As explained by the Court in the first motion-to-dismiss opinion, "Plaintiffs became aware of their alleged legal malpractice claim no later than May 23, 2017, when Plaintiffs contacted the FBI Office in Nashville and met with agents there concerning the Warren/CEA fraudulent scheme," but Plaintiffs did not file the present suit until May 31, 2019. (Doc. No. 39 at 28 (citing Doc. No. 1 at ¶¶ 69-71)).

In its second motion-to-dismiss opinion, relying on the reasoning of its first motion-to-dismiss opinion, the Court found May 23, 2017 to be the proper accrual date for the negligence claim against Leech Tishman. In other words, the Court found that the statute of limitations began running on May 23, 2017 as to the negligence claim against Leech Tishman because that is when Plaintiffs contacted the FBI concerning the fraudulent scheme. (Doc. No. 110 at 29). As for the application of the one-year statute of limitations to the negligence claim, the Court explained that Tennessee law instructs that "actions brought by third parties against attorneys for professional negligence[ ] of the sort involved in the instant case are to be considered 'malpractice' actions and fall within the statute of limitations of [Tenn. Code Ann. §] 28–3–104." *Hanson v. Rudnick & Wolfe*, 992 F.2d 1216, 1993 WL 100084, at *6 (6th Cir. 1993) (citing *Security Bank & Trust Co. v. Fabricating, Inc.*, 673 S.W.2d 860 (Tenn. 1983) (applying one-year statute of limitations to claims for professional negligence by parties who had no attorney-client relationship with the defendant attorney)); (Doc. No. 110 at 30–31). The Court found that the gravamen of the negligence claim was that Leech Tishman was responsible for the acts/omissions of unnamed tax attorneys, and therefore the one-year statute of limitations applied. (Doc. No. 110 at 29).

With the Court's prior findings and analysis in mind, the Court now must answer two questions with respect to the statute of limitations for Plaintiffs' negligent misrepresentation claim and fraudulent misrepresentation claim against Mankey. First, the Court must determine whether the one-year limitations period contained in § 28-3-104(c)(1) applies to these claims (*i.e.,* whether § 28-3-104(c)(1), which prescribes a one-year limitations period, applies to these claims). And if so, the Court must then decide whether the claims are time-barred because they were filed after the expiration of that one-year limitations period.

A.  Applicability of § 28-3-104(c)(1) to Plaintiffs' negligent misrepresentation claim against Mankey

Under Tennessee law, "actions brought by third parties against attorneys for professional negligence/negligent misrepresentation [] are to be considered 'malpractice' actions and fall within the statute of limitations of [Tenn. Code Ann. §] 28–3–104." *Hanson*, 992 F.2d at1993(citing *Security Bank & Trust Co.*, 673 S.W.2d 860 (applying one-year statute of limitations to claims for professional negligence by parties who had no attorney-client relationship with the defendant attorney)). Thus, the Sixth Circuit (applying Tennessee law) has found that Tenn. Code Ann. § 28-3-104(c)(1) applies to claims against attorneys for professional negligent misrepresentation. Importantly, the Sixth Circuit found this to be true even when the claim is brought by a "third party," meaning that a party who is not a "client" of the relevant attorney. *See Hanson*,1993 WL 100084, at *6. As discussed immediately below, the amended complaint accuses Mankey of negligent misrepresentation based on the professional standards of conduct to which he is subject as an attorney. The Court therefore finds that despite Plaintiffs not being "clients" of Mankey, Plaintiffs' claim of negligent misrepresentation against Mankey, should be treated like a "malpractice" action and is thus subject to the one-year limitations period contained in § 28-3-104(c)(1).

Plaintiffs assert that the Court should refrain from determining the applicable statute of limitations at this stage of the litigation because discovery will reveal whether Mankey was acting as an attorney or an "individual with an economic interest in the scheme who happened to be an attorney." (Doc. No. 127 at 10). According to Plaintiffs, this distinction is relevant to the question of what statute of limitations is applicable.

The Court is not persuaded by this argument. The amended complaint explicitly pleads a claim of negligent misrepresentation against Mankey on the basis that he was acting *as an attorney*, and not merely as an otherwise interested individual who happens to be an attorney. Indeed, the amended complaint alleges that Mankey is liable for negligent misrepresentation because he "failed to exercise reasonable care or competence in verifying the statements" he made to Plaintiffs, failed to "verify the accuracy of information to Plaintiffs," and failed to "review documentation *that a lawyer would normally expect to review* when representing entities. . .." (Doc. No. 88 at 35–36). Plaintiffs further assert that they were justified in relying on Mankey's statements because he is a "lawyer" who is "held to a higher standard than a lay person." (*Id.* at 34–35). Plaintiffs' entire theory for their negligent misrepresentation claim is therefore based on Mankey acting in his capacity as an attorney—a theory of liability that in no way turns on whether Mankey, in his capacity as a layperson, had an economic interest in the alleged scheme. And although the Court agrees with Plaintiffs' statement that "[s]imply because Mankey was a licensed as an attorney does not automatically award him the benefit of the one-year statute of limitations," (Doc. No. 127 at 14) this assertion is completely untethered from the facts alleged in the amended complaint. As demonstrated, Plaintiffs' amended complaint does not leave the door open for an alternative theory of liability against Mankey.

In support of their argument, Plaintiffs also point out that the Court's first motion-to-dismiss opinion found there to be no attorney-client relationship between Plaintiffs and Mankey as to the legal malpractice claim asserted against Leech Tishman based on vicarious liability. (Doc. Nos. 127 at 10–11, 39 at 27). Plaintiffs therefore argue that if Mankey was acting in his personal capacity,[4] rather than in his capacity as an attorney, then Plaintiffs' claims are not malpractice claims and thus § 28-3-104(c)(1) does not apply. (Doc. No. 127 at 10–11). As explained above, however, the Sixth Circuit has found § 28-3-104 to apply even to claims brought by third parties— *i.e.* individuals who did not have an attorney-client relationship with the accused. *See Hanson*, 1993 WL 100084, at *6 (explaining that § 28-3-104 applies to "actions brought by third parties against attorneys for professional negligence/negligent misrepresentation. . ..").

Even if the fact that Plaintiffs did not have an attorney-client relationship with Mankey was relevant to whether Plaintiffs' negligent misrepresentation claim is governed by Tenn. Code. Ann. § 28-3-104(c)(1), that finding was made *before* Plaintiffs filed their amended complaint. Therefore, Plaintiffs had the opportunity to amend their pleadings to account for the Court's finding and evidently chose not to do so. The Court construes the pleadings in favor of Plaintiffs on a motion for judgment on the pleadings, but even doing so here, the Court must call a spade a spade. Plaintiffs cannot now ask the Court to deny a motion for judgment on the pleadings on the grounds that Plaintiffs may pursue an alternative theory of liability that they could have included in their amended complaint, but instead, very explicitly, foreclosed. Plaintiffs' request is nothing more than an ill-fated attempt to further amend their complaint in the face of a colorable argument in favor of dismissal. But, as the undersigned has observed on several occasions, "it is an axiomatic

---

[4] The Court notes that the Court's finding in the first motion-to-dismiss opinion was that Mankey did not have an attorney-client relationship with Plaintiffs. The Court did not find that Mankey was acting in his personal capacity, and such a finding by no means necessarily follows from the finding that he was not acting as *Plaintiffs'* attorney.

rule that a plaintiff may not amend [her] complaint in [her] response brief." *See United States ex rel. Sibley v. Univ. Chicago Med. Cent.*, 486 F. Supp. 3d 1210 (N.D. Ill. 2020) (internal quotation marks and citation omitted).

Having determined that Plaintiffs' negligent misrepresentation claim against Mankey is subject to the one-year limitations period of § 28-3-104(c)(1), the Court must next determine whether the claim is time-barred. Because Tennessee law instructs that the Court treat the negligent misrepresentation claim as a malpractice claim, the Court here applies the same rules used to determine when the statute of limitations period begins to run for malpractice actions.[5] As the Court explained in the second motion-to-dismiss opinion, for malpractice actions, the start date of the running of the limitations period is determined by the discovery rule. *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998). Under this rule, the limitations period begins to run when the plaintiff knows or (in the exercise of reasonable care and diligence) should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant. *See id.*

Despite previously having conceded that the legal malpractice claim against Mankey is time-barred because it was not filed within one year of May 23, 2017, Plaintiffs now argue that the amended complaint does not support a finding that their negligent misrepresentation claim against Mankey had accrued by May 23, 2017. (Doc. No. 127 at 8). In its second motion-to-dismiss opinion, the Court explained with respect to the negligence claim against Leech Tishman that "Plaintiffs became aware of their alleged legal malpractice claim no later than May 23, 2017, when Plaintiffs contacted the FBI Office in Nashville and met with agents there concerning the Warren/CEA fraudulent scheme. (Doc. No. 1 at ¶¶ 69-71). Plaintiffs did not file this lawsuit until

---

[5] The Court notes that this approach is consistent with its analysis of whether the one-statute of limitations barred the negligence claim against Leech Tishman as contained in the Court's second motion-to-dismiss opinion. (Doc. No. 110 at 31).

May 31, 2019, more than two years later." (Doc. No. 110 at 32). The Court then found May 23, 2017 to be the proper accrual date for Plaintiffs' negligence claim because "by May 23, 2017, Plaintiffs were aware of Warren's fraudulent scheme and, thus, reasonably should have been aware that they were offered poor legal advice by Mankey, and the tax attorneys, whose advice Mankey relied on, regarding the scheme." (*Id.*).

Although Plaintiffs' negligence claim against Leech Tishman was based on the "acts/omissions of certain unnamed 'tax attorneys'" rather than on the acts/omissions of Mankey (as the negligent misrepresentation claim is based on), the factual overlap is such that the May 23, 2017 date is relevant to the negligent misrepresentation claim. (*Id.* at 29). Indeed, as the Court noted in the second motion-to-dismiss opinion, Mankey, in allegedly communicating with Plaintiffs, was at least in part allegedly relying on the advice of the tax attorneys. (*Id.* at 32). And the Court neither perceives nor has been directed to relevant facts suggesting that Plaintiffs' negligent misrepresentation claims did not accrue at the same time as did Plaintiffs' now-dismissed negligence claim. Therefore, the facts underlying the negligence claim against Leech Tishman and the negligent misrepresentation claim against Mankey indicate that both claims had accrued by May 23, 2017.

Plaintiffs nonetheless contend that reliance on the FBI meeting would be improper as to the negligent misrepresentation claim because the amended complaint does not allege that "Plaintiffs became aware that Mankey and Leech Tishman acted fraudulently or negligently during that meeting. . .." (Doc. No. 127 at 8). This argument misses the mark; the statute of limitations beings running when a plaintiff should have known that an injury had been sustained as a result of wrongful or tortious conduct. *See Shadrick*, 963 S.W.2d at 733. It is not relevant that Plaintiffs did not know or were not expected to know that the injury had been sustained as a result of wrongful

or tortious conduct *by Mankey or Leech Tishman in particular*. Just as with respect to Plaintiffs' negligence claim against Leech Tishman, the Court finds that after the meeting at the FBI office, Plaintiffs should have known that they were offered poor legal advice and that they had suffered an injury as a result. Thus, Plaintiffs' negligent misrepresentation claim accrued on May 23, 2017 and is barred by the one-year statute of limitations.

B. Applicability of § 28-3-104(c)(1) to Plaintiffs' fraudulent misrepresentation claim against Mankey

The Court next must determine whether Plaintiffs' fraudulent misrepresentation claim is similarly barred by the statute of limitations. Mankey argues that several courts have found that common law fraud claims against attorneys should be treated as malpractice claims when the gravamen of the complaint alleges violations of professional responsibilities. (Doc. No. 122 at 7–8). By contrast, Plaintiffs assert that their fraudulent misrepresentation claim is distinct from their negligent misrepresentation claim (and dismissed negligence claim), and thus should not be subject to the one-year limitations period of § 28-3-104(c)(1). (Doc. No. 127 at 12–13). Plaintiffs do not to cite authority or to relevant portions of the pleadings to support this proposition, but instead contend that Mankey failed to cite any authority demonstrating that § 28-3-104(c)(1) (with its one-year limitations period) applies to Plaintiffs' fraud claim. (*Id.* at 13).

As the Tennessee Court of Appeals explained in *Beckwith v. LBMC, P.C.*, "[t]o determine the applicable statute of limitations, we must ascertain the gravamen of each claim in the complaint." No. M2017-00972-COA-R3-CV, 2019 WL 1306201, at *2 (Tenn. Mar. 21, 2019) (internal quotation marks omitted). Ascertaining the gravamen of a claim requires the Court to consider the "legal basis of the claim" and then consider the "type of injuries for which damages are sought." *Id.*; *Melton v. Bank of Lexington*, No. 02-1152 B, 2008 WL 11411307, at *4 (W.D. Tenn. 2009) ("In determining the gravamen, or real purpose of an action, the court must look to

the basis for which damages are sought.") (internal quotation marks omitted). The Court is not bound by the designation of claims as provided by either party. *See* <u>Melton</u>, 2008 WL 11411307, at *4.

The Court finds *Keszthelyi v. Tune, Entrekin & White, P.C.*, upon which Mankey relies, persuasive here. No. 1:06-cv-108, 2008 WL 1869740, at *5–6 (E.D. Tenn. Apr. 23, 2008). In *Keszthelyi*, the plaintiff had been a defendant in a criminal case in which he agreed to forfeit certain property to the Government, as formalized through a consent decree. *See id.* at *1–2. The plaintiff then brought claims of common law fraud and deceit against his former attorney and the attorney's employer-law firm claiming that the attorney improperly entered a consent decree without his knowledge. *See id.* at *1–2. The court explained that gravamen of the plaintiff's fraud claim was "based upon Defendants' failure to reject the Consent Decree on [the p]laintiff's behalf and failure to prevent [the p]laintiff from signing the Agreed Preliminary Order of Forfeiture, because Defendants knew or should have known the entirety of the assets were not drug-related, as those documents assert." *See id.* at *6. The court further noted that the plaintiff's claim that the defendants "failed to fulfill the professional duties owed to him as his legal representation is exactly the nature of a malpractice suit." *See id.* The court, applying Tennessee law, thus found that the fraud claims should be treated as malpractice claims and thus were subject to the one-year limitations period for malpractice claims prescribed by the Tennessee Code.[6]

---

[6] The court in *Keszthelyi* cited Tenn. Code Ann. § 28-3-104(a)(2) as the Tennessee Code provision prescribing a one-year statute of limitations for malpractice claims. *See* 2008 WL 1869740, at *3. At the time the court decided *Keszthelyi*, that provision stated that "(a) The following actions shall be commenced within one (1) year after the cause of action accrued" "(2) Actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort." Section 28-3-104 has since been updated, and § 28-3-104(c)(1) now governs the statute of limitations for malpractice claims. Because § 28-3-104(c)(1) contains virtually identical language to § 28-3-104(a)(2) at the time it was applied in *Keszthelyi*, the fact that the court in *Keszthelyi* applied § 28-3-104(a)(2) (as it existed at the time) is of no consequence to the Court's analysis herein.

In support of their fraudulent misrepresentation claim, Plaintiffs allege that "at the time Defendant made statements to Plaintiffs about the Funds [], that [sic] they either knew were false or acted with reckless disregard as to their truth or falsity." (Doc. No. 88 at 37). Plaintiffs also repeat the allegation that "[a]s a lawyer and a law firm, Defendants are held to a higher standard than a lay person," which in turn justified Plaintiffs' reliance on the "accuracy of any statements by Defendants concerning CEA [Clean Energy Advisors] and the Funds." (*Id.*). As to the fraudulent misrepresentation claim against Leech Tishman, Plaintiffs allege that "Mankey was working on behalf of Leech Tishman as the CEA's general counsel at the time the misrepresentations were made, which was within the scope of his employment." (*Id.*).

Plaintiffs' fraudulent misrepresentation claim closely resembles in material ways the fraud claim in *Keszthelyi* that the court found should be treated as a legal malpractice claim. Plaintiffs' fraudulent misrepresentation claim, though alleging that Mankey knew his statements were false (or acted with reckless disregard as to their truth or falsity), ultimately relies on professional standards to which Mankey is subject as an attorney. Indeed, the amended complaint states that Plaintiff relied on Mankey's allegedly fraudulent statements because he was an attorney, and it then seeks to hold Leech Tishman vicariously liable based on "Mankey [] working on behalf of Leech Tishman as CEA's general counsel at the time the misrepresentations were made. . . ." (*Id.* at 37). Therefore, the Court finds that Plaintiffs' fraudulent misrepresentation claim should be treated as a legal malpractice claim for purposes of § 28-3-103(c)(1), and thus is subject to its one-year limitations period. *See Melton*, 2008 WL 114113707, at *1 (analogizing to *Keszthelyi* and finding that the plaintiff's state law claims, several of which included fraud claims, were subject to the one-year limitations period of § 28-3-104(a)(2) because the claims by their nature were malpractice claims).

As to the accrual date for Plaintiffs' fraudulent misrepresentation claim, the Court finds that the claim had accrued by May 23, 2017. Based on the allegations in the amended complaint, the facts underlying Plaintiffs' fraudulent misrepresentation claim do not differ from those underlying Plaintiffs' negligent misrepresentation claim. Furthermore, Plaintiffs' above-discussed argument as to why the May 23, 2017 date is improper does not differentiate between the facts underlying these two respective claims. Therefore, as with the negligent misrepresentation claim, the Court finds that Plaintiffs became aware of their injury "no later than May 23, 2017, when Plaintiffs contacted the FBI Office in Nashville and met with agents there concerning the Warren/CEA fraudulent scheme. (Doc. No. 1 at ¶¶ 69-71)." (Doc. No. 110 at 32). Because Plaintiffs did not file this lawsuit until May 31, 2019, Plaintiffs' fraudulent misrepresentation claim against Mankey is barred by the applicable (one-year) statute of limitations.

**2. Leech Tishman's Motion for Judgment on the Pleadings**

 A. <u>Negligent misrepresentation and fraudulent misrepresentation claims against Leech Tishman</u>

Leech Tishman moves to dismiss Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims against it on the grounds that they are barred by the same statute of limitations. (Doc. Nos. 123, 124). As the Court explained in its first motion-to-dismiss opinion, a plaintiff's right to pursue a vicarious liability claim against a principal is precluded "when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal." *Taylor v. Miriam's Promise*, No. M2017-01908-COA-R3-CV, 2019 WL 410700, at *10 (Tenn. Ct. App. Jan. 31, 2019) (citing *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 106 (Tenn. 2010)). A plaintiff cannot "assert a vicarious liability claim against the principal after its right to assert a claim against the agent has become procedurally barred." *In re Regions Morgan Keegan Sec., Derivative & Erisa*

*Litig.*, No. 2:13-cv-02841-SHM-dkv, 2015 WL 10713983, at *3 (W.D. Tenn. July 31, 2015) (quoting *Abshure,* 325 S.W.3d at 110). Vicarious liability may be extinguished when the underlying claims against the agent are resolved, because "[i]f the agent can no longer be found liable in a judicial proceeding . . . then it automatically follows that the principal cannot be held liable, where . . . the sole basis of the cause of action against the principal is vicarious in nature." *Cunningham v. Trilegiant Corp.*, No. 3:15-cv-989, 2016 WL 10650606, at *3 (M.D. Tenn. Aug. 26, 2016) (quoting *Olympia Child Dev. Ctr., Inc. v. City of Maryville*, 59 S.W.3d 128, 135 (Tenn. Ct. App. 2001) (holding that settlement of the plaintiff's claim with the agent precluded vicarious liability of the principal regardless of the amount or adequacy of the settlement)).

Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims against Leech Tishman are based on Leech Tishman's alleged vicarious liability for Mankey's conduct. (Doc. No. 88 at 34–37). Indeed, as to both claims, Plaintiffs plead that

> Leech Tishman is vicariously liable under the doctrine of respondeat superior for the torts committed by Mr. Mankey during the course of his employment as an employee and/or owner of the firm. Mr. Mankey was an employee and/or owner at the time the misrepresentations were made to the Plaintiffs. Mankey was working on behalf of Leech Tishman as CEA's general counsel at the time the misrepresentations were made, which was within the scope of his employment.

(*Id.* at 35–36). Even if each claim did not include an explicit reference to Leech Tishman's alleged vicarious liability, the factual allegations underlying each claim evidence that Plaintiffs seek to hold Leech Tishman liable for the acts of its agent (specifically, Mankey).

As discussed above, the Court finds that Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims are barred by the statute of limitations. Because the negligent misrepresentation and fraudulent misrepresentation claims against Mankey are time-barred, vicarious liability against Leech Tishman on the basis of these claims is also barred.

Moreover, the tolling agreement entered into by Leech Tishman and Plaintiffs does not apply here. As the Court explained in its second motion-to-dismiss opinion (which referred back to the first motion-to-dismiss opinion):

> Further, the Tolling Agreement also does not save Plaintiffs' claims from dismissal based on limitations, for reasons mirroring those in the Court's prior Memorandum Opinion as to why the Tolling Agreement did not save Plaintiffs' legal malpractice claim from dismissal based on limitations. (Doc. No. 39 at 28-31). There, the Court explained that the Tolling Agreement failed to save Plaintiffs' legal malpractice claim asserted against Leech Tishman because "Plaintiffs' legal malpractice claims against Mankey were extinguished by the applicable statute of limitations *before* Plaintiffs filed this vicarious liability claim against Leech Tishman [based on Mankey's acts and omissions]." (*Id*. at 30).

(Doc. No. 110 at 34 (citing Doc. No. 39 at 28–31)). The Court's reasoning from its two prior memorandum opinions is equally applicable here. Plaintiffs' claims against Leech Tishman based on vicarious liability are time-barred because the allegations against Mankey, on which Leech Tishman's alleged liability is based, are time-barred. The tolling agreement does not apply because the relevant claims against Mankey were extinguished by the statute of limitations before Plaintiffs filed the corresponding vicarious liability claims against Leech Tishman. Thus, Plaintiffs' negligent misrepresentation and fraudulent misrepresentation claims against Leech Tishman are barred by the one-year statute of limitations.

## B. Negligent retention and supervision claim

Leech Tishman moves to dismiss Plaintiffs' negligent retention and supervision claim on the basis that Plaintiffs fail to state a claim upon which relief can be granted. (Doc. No. 124 at 14). "A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness of the job." *See Bazemore v. Performance Food Group, Inc.*, 478 S.W. 3d 628, 638–39 (Tenn. Ct. App. 2015) (internal quotation marks omitted). "The

plaintiff must show that the employer knew, or by the exercise of reasonable care might have ascertained, that the employee or independent contractor was not qualified to perform the work for which he was hired." *Davis v. Covenant Presbyterian Church*, No. M2013-02273, 2014 WL 2895898, at *8 (Tenn. Ct. App. June 23, 2014).

In declining to draw a bright line between the claims of negligent hiring and negligent retention, the Tennessee Supreme Court has explained that "[t]he torts of negligent hiring, supervision, and retention all involve essentially the same questions: did the defendant have notice of the wrongdoer's propensity to commit [the alleged] [] misconduct, authority to prevent the harm, and some duty of care to those who were harmed?" *See Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W. 3d 436, 453–454 (Tenn. 2012).

Leech Tishman, relying on *Redwing*, posits that in order for Plaintiffs to state a claim for negligent retention and supervision, Plaintiffs must plead that Leech Tishman "had prior notice that Mankey had the propensity to engage in acts/omissions which are the basis of Plaintiffs' claims." (Doc. No. 124 at 15–16). Plaintiffs dispute that Leech Tishman must have had such prior notice. (Doc. No. 127 at 20). Plaintiffs, relying on a Tennessee Court of Appeals case, assert that a claim of negligent retention and supervision instead requires a plaintiff to plead that the employer-defendant foresaw or should have foreseen the general way the injury or loss occurred. (*Id.* at 20).

The Court sees no substantive distinction between the standards for analyzing a negligent retention and supervision claim set forth respectively by Leech Tishman and Plaintiffs. In the Court's view, inquiring whether an employer-defendant was required to have foreseen the way in which an injury occurred (as urged by Plaintiffs) is substantively the same as inquiring whether an employer-defendant had prior notice that the employee had the propensity to commit the alleged

misconduct (as urged by Leech Tishman). Under both standards, the employer-defendant must have been previously aware of a risk that the employee would cause the alleged injury (via the employee's misconduct). To the extent that there is any material distinction between the standards, the Court applies the standard from *Redwing* as set forth by Leech Tishman. As a Supreme Court of Tennessee case, *Redwing* is especially authoritative with respect to the requirements for a negligent retention and supervision claim under Tennessee law.

Therefore, the Court next turns to whether the amended complaint sufficiently alleges that Leech Tishman had "notice of the wrongdoer's propensity to commit [the alleged] [] misconduct, authority to prevent the harm, and some duty of care to those who were harmed[.]" *See Redwing*, 363 S.W. 3d at 453–454. In support of their negligent retention and supervision claim, Plaintiffs allege that "Leech Tishman knew or should have known that Mr. Mankey lacked the necessary competence, fitness, or information to make any representations about the Funds," and that "[d]espite knowing that Mr. Mankey lacked the necessary competence, fitness, or information to make representations about the Funds, Leech Tishman failed to prevent him from doing so." (Doc. No. 88 at 41–42). These allegations, however, are not facts—they are at best legal conclusions couched as facts, which means of course that they are mere legal conclusions. The Court therefore need not treat these allegations as true. *See Iqbal*, 556 U.S. at 678. And without factual matter offered in support of these allegations, they fail to support plausible claim for relief. *See id.*

The only alleged fact in the amended complaint offered in support of the negligent retention and supervision claim is that "Leech Tishman was aware that it lacked the necessary documentation to make any representations about the legitimacy or investment purpose of the Funds." (Doc. No. 88 at 41). But this factual allegation, even when taken as true, does not illustrate that Leech Tishman was on notice that *Mankey* had a propensity to commit the alleged misconduct;

it serves instead to assert broader failings by Leech Tishman that do not relate specifically or necessarily to Mankey at all. Lacking alleged factual matter to support the claim that Leech Tishman knew or should have known of Mankey's supposed unsuitability to make the representations he purportedly made, Plaintiffs have failed to state a valid claim for negligent retention or supervision. *See Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp. 3d 1033, 1038–1039 (M.D. Tenn. Oct. 17, 2017) (plaintiff failed to state a claim for negligent hiring, training, monitoring and supervision because complaint did not allege facts suggesting that the defendant knew or should have known that any employee risked committing the alleged misconduct); *Keister v. Amazon.com, Inc.*, 3-20-cv-00862, 2021 WL 1390746, at *2 (M.D. Tenn. Apr. 13, 2021) (plaintiff failed to state a claim for negligent hiring because the complaint did not allege facts that defendant-employer was aware of a particular employee's criminal record who attacked another employee or that defendant-employer could have foreseen the probability of the alleged misconduct without knowledge of the criminal record), *report and recommendation adopted by* 2021 WL 2371486 (M.D. Tenn. June 9, 2021).

The claim for negligent retention and supervision therefore must be dismissed.

<u>CONCLUSION</u>

One can naturally sympathize greatly with Plaintiffs and wish for them to be made whole for the losses they sustained as the result of an egregious financial crime. But to make themselves whole (or at least more whole) via civil litigation, Plaintiffs need to bring the right claims, against the right defendants, at the right time—and with adequate alleged factual matter. In the view of the Court, which has looked at this case repeatedly over the course of several years, that simply did not happen, despite Plaintiffs' attempts (and understandable desire) to make it happen. This is

true with respect to the claims at issue on the instant Motions—all claims heretofore remaining in this action—just as it has been true with respect to the claims the Court previously has dismissed.

Accordingly, for the reasons stated herein, the Motions (Doc. Nos. 121, 123) will be granted. Specifically, the only claims heretofore remaining (Counts IV, V, and VII) will be dismissed. A corresponding order will be entered separately.



_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE